## NATIONAL LABOR RELATIONS BOARD v. J. I. CASE CO.

### No. 13311.

United States Court of Appeals Ninth Circuit.

Jan. 22, 1953.

George J. Bott, General Counsel, NLRB., David P. Findling, Asso. Gen. Counsel, A. Norman Somers, Asst. Gen. Counsel, Owsley Vose and Margaret M. Farmer, Washington, D. C., for petitioner.

Clark M. Robertson and O. S. Hoebreckx, Milwaukee, Wis., for respondent.

Before HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

In this proceeding the National Labor Relations Board asks our decree enforcing its order requiring respondent to bargain with United Automobile, Aircraft, and Agricultural Implement Workers of America, hereafter called the Union. Respondent had rejected the Union's request for a bargaining conference, and notwithstanding the Board's order has continued to deny the request on the ground that the certification of the Union is invalid. The asserted invalidity rests on respondent's interpretation of § 9(c)(1) of the Act,[1] relating to representation proceedings. Before turning to the statute it will be helpful briefly to review the facts.

In November of 1950 the Union filed a petition with the Board requesting an elec-

1. 29 U.S.C.A. § 159.

tion and its certification as the bargaining representative of respondent's production and maintenance employees at its Stockton plant. As is required by the statute in question, the petition alleged that a substantial number of respondent's employees desired to be represented by the Union for collective bargaining and that respondent declined to recognize the Union. Another union filed a similar petition affecting the same employees and employer. In January 1951 the Board held a consolidated hearing on these petitions. The record of the hearing contains a number of stipulations, in which respondent joined. Among these were stipulations to the effect that respondent's Stockton plant is in commerce within the meaning of the Act; that prior to filing its petition the Union sent respondent a letter demanding recognition as bargaining agent of its employees and that respondent made no response thereto; and that respondent had not theretofore recognized any union nor had a bargaining contract with any labor organization. The Union's petition above referred to was also introduced in evidence.

Following the hearing the Board found, among other things, that a question affecting commerce exists concerning the representation of certain of respondent's employees, and it ordered that an election be held. At the election a majority of the employees in the specified unit voted in favor of the Union; and a certificate was issued certifying the Union as bargaining representative of the unit at the Stockton plant.

Respondent's contention is that the wording of § 9 (c)(1) precludes the Board from determining the existence of a question concerning representation unless the record in the representation proceeding contains evidence affirmatively showing that the petitioning union represents a substantial number of the employees in the unit. It argues that the absence of such a showing was fatal to the Board's jurisdiction in the representation proceeding, hence the certification of the Union was a void act.

So far as here pertinent, § 9(c)(1), as amended by the Labor-Management Act of 1947, provides:

"Whenever a petition shall have been filed, in accordance with such regulations as may be prescribed by the Board—

"(A) by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees (i) wish to be represented for collective bargaining and that their employer declines to recognize their representative as the representative defined in section 9(a), * * * the Board shall investigate such petition and if it has reasonable cause to believe that a question of representation affecting commerce exists shall provide for an appropriate hearing upon due notice. Such hearing may be conducted by an officer or employee of the regional office, who shall not make any recommendations with respect thereto. If the Board finds upon the record of such hearing that such a question of representation exists, it shall direct an election by secret ballot and shall certify the results thereof."

It appears from various of its annual reports that the Board early adopted the practice of requiring petitioning unions in representation cases to submit proof of the substantiality of their interest among the employees in the proposed unit at an informal conference prior to the representation proceeding.[2] As stated in the report for 1943 (p. 44), the purpose of this requirement was "to prevent [the Board's] process and the time and efforts of employees as well as employers from being dissipated and wasted by proceedings instituted by organizations that have little or no chance of being designated as the exclusive representatives by the employees." By 1944 the Board had had sufficient experience to determine that unless a union was able to make a prima facie showing of at least 30% representation in the proposed unit, the probability of its being able to achieve majority support in the secret election was slight. Accordingly the 30% figure was established as the prima facie showing of interest which

2. NLRB, Fifth Annual Report (1940), p. 54; Sixth Annual Report (1941), p. 55; Seventh Annual Report (1942), p. 54; Eighth Annual Report (1943), p. 44.

the union must normally make at the time of the preliminary investigation by the Board's field staff. Brad Foote Gear Works, Inc., 60 NLRB 97, 99, note 4; National Labor Relations Board, Tenth Annual Report (1945), p. 16, note 7. It appears that although the amended § 9 (c)(1) specifies no more than that the petition shall allege that the union represents a substantial number of employees, the Board still requires it informally to submit proof of the substantiality of its claim prior to the representation hearing, the purpose being, as said above, to screen out frivolous petitions. When the preliminary inquiry which the Board makes discloses that the union's interest is substantial, it is the practice of the Board to proceed with its representation investigation without permitting formal challenge at the hearing to this preliminary determination.[3]

The practice of treating the substantiality of the petitioning union's showing of interest as a matter of administrative concern, only, has undergone no change since Taft-Hartley. Congress was of course familiar with this practice; and the legislative history of the Labor-Management Act of 1947 contains no indication of a purpose to change or interfere with it.[4] The Board's view is that the purpose of Congress was merely to codify the practice.[5]

3. In Matter of O. D. Jennings & Company, 68 NLRB 516, 517–518, the Board said:

"The Company contends that the Board has no jurisdiction in this case because no evidence was presented at the hearing to show that the [union] represents a substantial number of employees in the unit which it alleges to be appropriate. In this connection the Company particularly objects to the recent discontinuance of our former practice of introducing in evidence at the hearing in a representation proceeding, our Regional agent's report on the prima facie showing of interest made by the [union] and any other labor organizations claiming to represent employees involved in the proceeding.[3] It asserts that the nondisclosure of the report at the hearing in this case is an instance of 'star-chamber' procedure. These contentions have no merit. We have repeatedly pointed out that such reports are administrative expedients only, adopted to enable the Board to determine for itself whether or not further proceedings are warranted, and to avoid needless dissipation of the Government's time, effort, and funds. As such, we have frequently explained, the reports are not subject to direct or collateral attack at hearings. [Footnote omitted.] The Board's authority to conduct an investigation, under Section 9(c) of the Act is in no manner dependent upon the [union's] showing of prima facie representative interest, nor can anything contained in our agent's reports on this subject affect any rights of the parties. It is the election, not the report, which decides the substantive issue whether or not the [union] or another labor organization, if any, actually represents a majority of the employees involved in a representation case."

In footnote 3 to this discussion the Board stated: "This change of practice does not affect our routine requirement that a labor organization seeking a Board investigation and determination of representatives must exhibit a showing of substantial interest to our Regional agents. Our decision to discontinue the introduction of our agents' reports thereon into evidence at the hearings implements our view that the prima facie showing has a purely administrative function; it eliminates a feature of our procedure which appears to have caused confusion."

4. See House Committee Report No. 245 on § 9(c), H.R. 3020, as passed by the House, 80th Cong., 1st Sess.; Senate Report No. 105 ibid.

Referring to § 9(c) (1) of H.R. 3020, analogous to § 9(c) (1) of the Act as passed by both houses, House Committee Report No. 245, supra, stated: "(D) To obtain an election, a representative must, *in the preliminary investigation by the Administrator,* show that it represents at least 30 percent of the employees in the unit it claims to be appropriate. The present Board usually follows a similar rule now." [Emphasis added.]

5. Discussing the effect of the amendments to § 9(c) on its practice and procedure, the Board has said: "The amendments to Section 9(c) of the Act codify the Board's former rule that representation proceedings shall be instituted by petition. * * * [Section 9(c)] codifies the Board's long time practice of having a petition investigated administratively in the regional office before a hearing is scheduled. * * * The amended act prescribes that employees or their representatives * * * shall allege that their petition is supported by 'a substantial number of employees'. The Board views this provision of the statute as codifying

We see nothing in § 9(c)(1) purporting to make proof of substantial union interest an element in determining whether or not a question of representation exists. The section does not undertake to define the elements which are essential to such a determination. Naturally, as the statute indicates, the question of representation must be one "affecting commerce," else Board jurisdiction would not attach. Accordingly a hearing is appropriate and necessary in order to determine whether the employer is in commerce. The Board inquired into this matter at the hearing in this instance, and the question was settled by stipulation. The phrase "such a question of representation", contained in the last sentence of subdivision (c)(1) and heavily stressed by the respondent, obviously refers back to the earlier phrase indicating that the question of representation must be one affecting commerce.

Other matters, too, are appropriate subjects for inquiry at the representation hearing. One of these is whether a request for bargaining had in fact been made by the union, and denied or ignored by the employer. Another is whether there is any subsisting bargaining contract which would operate as a bar to an election. These matters, also, together with a determination of the appropriate unit, were settled in this instance by stipulation. But we agree with the Board that no statutory purpose would be served by requiring formal proof at the hearing of the substantiality of the Union's claim to representation or by permitting the contending parties to litigate such issue at the hearing. Among other undesirable consequences, a trial of that nature would bring about disclosure of the individual employees' desires with respect to representation and would violate the long-established policy of secrecy of the employees' choice in such matters. As said by the Board in the case quoted from in footnote 3, supra, "it is the election * * * which decides the substantive issue whether or not the [union] or another labor organization, if

any, actually represents a majority of the employees involved in a representation case."

A decree will be entered enforcing the Board's order as prayed.

---

its prior practice. * * * Other familiar prerequisites to the resolution of a question concerning representation still obtain, although not similarly codified * * * the Board has, since the enactment of the amendments, substantially adhered to its previously formulated rules and established practices governing representation elections." NLRB, Thirteenth Annual Report (1948), pp. 20, 26, 28, Fourteenth Annual Report (1949), pp. 26–28.