**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**SWIFT AND COMPANY, Respondent.**

**No. 13473.**

United States Court of Appeals Third Circuit.

Argued April 20, 1961.

Decided July 24, 1961.

Rehearing Denied Aug. 28, 1961.

Melvin J. Welles, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Julius G. Getman, Atty., N. L. R. B., Washington, D. C., on the brief), for appellant.

Bernard G. Segal, Philadelphia, Pa. (Samuel D. Slade, Shirley S. Bitterman, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for respondent.

Ann Leonard, Chicago, Ill., for amicus curiae, National Brotherhood of Packinghouse Workers.

Before GOODRICH, KALODNER and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Is it an unfair labor practice under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. ("Act"), for an employer to enter into an agreement with

a previously certified union while a petition for an election is pending? The National Labor Relations Board so held and now seeks enforcement of its order made pursuant thereto.

Swift and Company, respondent, and the National Brotherhood of Packinghouse Workers ("brotherhood"), were parties to a master collective bargaining agreement, due to expire on September 1, 1959, that included production and maintenance employees at the respondent's Harrisburg, Pennsylvania, plant. The parties began negotiating a renewal of the agreement on July 23, 1959. Shortly thereafter, on August 13, 1959, the Amalgamated Meat Cutters and Butcher Workmen of North America ("meat cutters") filed a representation petition with the board, on which a hearing was held on September 17, 1959, requesting that an election be held at the Harrisburg plant. On October 22, 1959, before that petition was disposed of or an election held, respondent and the brotherhood executed a new agreement.

On October 12, 1959, the meat cutters filed an unfair labor practice charge. Thereafter the board, based upon a stipulation of fact by the parties, found that the filing of the petition, followed by an administratively determined showing of interest, raised a real question concerning representation at the Harrisburg plant, and that renewal of the agreement, in light of this fact, constituted a violation of the Act. More particularly, the board found that, by renewing the agreement, respondent restrained and coerced its employees in the selection of a bargaining representative, a violation of §

8(a) (1) of the Act, and secondly, that it rendered unlawful support to the brotherhood in violation of § 8(a) (2) of the Act.[1] Affirmatively, the board's order, which it seeks to have enforced here, directed respondent to desist from applying the agreement to the Harrisburg employees and to withdraw recognition from the brotherhood. 128 N.L.R.B. No. 87 (1960).

In opposing enforcement, respondent contends that it cannot be found guilty of an unfair labor practice for executing a collective bargaining agreement with a certified union, as the brotherhood was, since refusal to do so would itself have constituted an unfair labor practice under the Act. It also contends that the record fails to support the board's finding that a real question of representation existed at the Harrisburg plant. A brief filed on behalf of the brotherhood, as amicus curiae, also urges those points. The board answers the first contention by saying that "obviously, in the circumstances here, the Board would not, and could not, have found respondent guilty of a refusal to bargain because it maintained its neutrality by refraining from dealing with either of the competing unions." It meets the second contention squarely by urging that a real question exists once a petition has been properly filed.

Under the Midwest Piping doctrine, which the board invokes here,[2] it is an unfair labor practice for an employer to recognize and bargain with one of two or more unions as the exclusive bargaining agent of its employees during pendency of a rival union's petition for certifica-

---

1. Section 8(a) provides, in relevant part, as follows:
   "(a) It shall be an unfair labor practice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 of this title;
   "(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it; Provided, That subject to rules and regulations made and

published by the Board pursuant to section 6 of this title, an employer shall not be prohibited from permitting employees to confer with him during working hours without loss of time or pay * * *." 29 U.S.C.A. § 158(a).

2. The name derives from Midwest Piping and Supply Co., 63 N.L.R.B. 1060 (1945). The opinion of the board in that case shows that there was substantial evidence to support the finding of a real question concerning representation.

tion where a real question concerning representation exists. The board has held, however, that it is the continuing existence of the representation *claim* and not the mere filing of a petition which determines whether the doctrine should be applied.[3] It has persuasively, and we believe correctly, defined a real question of representation in National Carbon Division, 105 N.L.R.B. 441, 443 (1953), where it said:

"We are convinced by the record as a whole that during the pendency of the petition and after its dismissal by the Board *there was a reasonable basis for the Respondent to have believed that the Union no longer represented a majority of the employees*. Thus, the Union's certification was about 5 years old. It had just terminated an unsuccessful strike which resulted in the replacement of a large number of Union adherents. The Independent had made a rival claim of representation upon the Respondent, and implemented it by filing a representation petition. As stated above, the Independent's petition was administratively dismissed by the Board, not because its claim was unfounded, but because of the pendency of certain charges filed by the Union which have been found herein to be without merit. We are convinced that the dismissal of the petition in these circumstances did not alleviate the Respondent's otherwise *reasonable and pre-existing doubt as to the Union's majority status* but only delayed its resolution." (Emphasis supplied.)

In William Penn Broadcasting Co., 93 N.L.R.B. 1104 (1951), the board pointed out that it is the responsibility of the general counsel to show that a real question exists. It there went on to say that "necessarily, it is for the *Board*,

within the prescribed procedures of the Act, ultimately to determine after full litigation of the issue, whether a real question concerning representation existed under particular circumstances." Id. at p. 1105, n. 5. Of course, that determination must be upheld so long as it is supported by substantial evidence. Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. See Cleaver-Brooks Mfg. Corp. v. N. L. R. B., 7 Cir., 264 F.2d 637, certiorari denied 1959, 361 U.S. 817, 80 S.Ct. 58, 4 L.Ed.2d 63; District 50, United Mine Workers v. N. L. R. B., 4 Cir., 1956, 234 F.2d 565.

There must be a finding of a real question of representation, i. e., that the employer had a reasonable basis for believing that the union no longer represented a majority. Here, the board made that finding. We must now determine whether the record contains substantial evidence to support it. In doing so, we are guided in part by what the board itself said while referring to the Midwest Piping doctrine in Ensher, Alexander & Barsoom, Inc., 74 N.L.R.B. 1443, 1445 (1947):

"* * * That doctrine, necessary though it is to protect freedom of choice in certain situations, can easily operate in derogation of the practice of continuous collective bargaining, and should, therefore, be strictly construed and sparingly applied."

From our review of the record here, we think that the board's finding is not supported by substantial evidence, and thus it becomes unnecessary to pass on respondent's first contention.[4]

The board admits, as indeed it must, that the only evidence in the record to support the finding is filing of the petition by the meat cutters and an ad-

---

3. Pittsburgh Valve Co., 114 N.L.R.B. 193 (1955), reversed on other grounds 4 Cir., 1956, 234 F.2d 565.

4. On this question, see St. Louis Independent Packing Co. v. N. L. R. B., 7 Cir., 1961, 291 F.2d 700; N. L. R. B. v. Spiewak, 3 Cir., 1950, 179 F.2d 695; Samoff and Summers, "The Eternal Triangle in Labor Relations," 4 Lab.L.J. 318, 325 (1953).

ministrative determination that a hearing thereon should be held. A hearing took place on September 17, 1959. No election was ever ordered or held. These facts, we think, are clearly insufficient, for at most they establish the existence of a naked claim on the part of the meat cutters to majority representation. See St. Louis Independent Packing Co. v. N. L. R. B., 7 Cir., 1961, 291 F.2d 700.

■ Recognizing its tenuous position, the board urges that we give weight to its disposition of the petition for election. Before proceeding to a hearing on the petition, the board points out that it has a statutory duty to first find that there exists "reasonable cause to believe that a question of representation affecting commerce exists." [5] Its usual procedure in such cases is to check to see if the petitioning union has been designated by at least thirty per cent of the employees. We are asked simply to assume that such occurred here, for there is no evidence in the record in this regard, and the board is apparently satisfied with saying that such a showing "must have" occurred, since it is required by the board's administrative practices.[6] The showing of thirty per cent interest, however, has a limited purpose. It was devised as a means of facilitating the board's decision as to whether the circumstances justify holding an election at all.[7] When used for this purpose, the board has held that such a showing may not be subject to collateral attack. Sebastopol Cooperative Cannery Co., 111 N.L.R.B. 530 (1955). Consistent therewith, the board has refused to permit attack on the procedure employed in establishing a showing of interest, or to pass on allegations

that cards supporting the petition are false or otherwise invalid. 24 Annual Report NLRB 14–15 (1959).

As is readily apparent, there is a great deal of difference between using the thirty per cent showing to support a decision to hold an election and in using it as an evidentiary basis for an unfair labor practice finding. The board itself has indicated, on at least two occasions, that membership cards are not reliable evidence of employee union allegiance where there are rival unions competing for membership.[8] As the brotherhood indicated in its brief here, a third union, the United Packinghouse Workers of America, AFL–CIO, filed an election petition on June 29, 1959, which was withdrawn on August 7, 1959, only to be followed by the meat cutters' petition, filed on August 13, 1959. There is one other evidentiary fact to round out the picture. At the time when the agreement was renewed, it appears that approximately ninety-five per cent of respondent's employees at the Harrisburg plant were having dues for the brotherhood deducted from their pay pursuant to voluntary authorization, and that during the so-called "escape period," which occurred prior to September 1, 1959, no employee revoked an authorization. In the absence of substantial evidence in the record to support the finding that the employer had a reasonable basis for believing that the brotherhood no longer represented a majority of its employees, the board's ultimate finding of an unfair labor practice must fall.

The petition for enforcement will be denied.

---

5. § 9(c) (1) of the Act, 29 U.S.C.A. § 159(c) (1).

6. § 101.18 N.L.R.B. Statements of Procedure, Series 7.

7. 20 Annual Report N.L.R.B. 12 (1955). For a full discussion of the development and efficacy of the thirty per cent show-

ing of interest procedure, see N. L. R. B. v. J. I. Case Co., 9 Cir., 1953, 201 F.2d 597.

8. Novak Logging Co., 119 N.L.R.B. 1573 (1958); Midwest Piping & Supply Co., 63 N.L.R.B. 1060 (1945). See N. L. R. B. v. Wheland Co., 6 Cir., 1959, 271 F.2d 122.