**INTERTYPE COMPANY, a Division of Harris-Intertype Corporation, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 11561.**

United States Court of Appeals
Fourth Circuit.

Argued April 2, 1968.

Decided Aug. 23, 1968.

Certiorari Denied Jan. 20, 1969.

See 89 S.Ct. 686.

Kenneth C. McGuiness, Washington, D. C. (Vedder, Price, Kaufman, Kamm-

holz & McGuiness, Washington, D. C., and Flournoy L. Largent, Jr., Winchester, Va., on brief), for petitioner.

Allison W. Brown, Jr., Atty., N.L.R.B. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, and William J. Avrutis, Atty., N.L.R.B., on brief), for respondent.

Before SOBELOFF, BOREMAN and WINTER, Circuit Judges.

SOBELOFF, Circuit Judge:

Petitioning for review of the Labor Board's order requiring it to bargain with an elected and certified union,[1] the Intertype Company, while admitting its refusal to bargain, mounts a two-fold attack upon the representation proceeding which culminated in certification. The Company contends that the quashing of two subpoenas precluded a complete review of the issues and that in any event the facts which appear on the existing record demonstrate that the Union's conduct prevented its employees from exercising a free choice in the election. We reject each of these contentions and enforce the Board's order over the Company's further objection that the order is overly broad.

The facts, as they bear on the present review, can be briefly stated. The Union initiated its organization drive in early May, 1965. During the campaign, but before the Union petitioned for a representation election, Intertype filed an unfair labor practice charge predicated on "underhanded" tactics allegedly employed by the Union in its effort to secure authorization cards. In January, 1966, the parties reached a settlement agreement pursuant to which the Union was to post notices advising employees at the Intertype plant that they would in no manner be coerced or restrained in the exercise of any right under the Labor Act.

█ Shortly thereafter, the Union petitioned for a representation election.

The employer countered with a motion to dismiss the petition on the ground that the authorization cards used to show the requisite employee interest had been procured during the posting period and were consequently tainted. This objection, however, was ill-founded, for the accuracy of the Board's basis in ordering an election is of no concern to the employer.

█ It is well established that "[t]he Board's authority to conduct an investigation, under Section 9(c) of the Act is in no manner dependent upon the [union's] showing of *prima facie* representative interest * * *. It is the election * * * which decides the substantive issue whether or not the union * * * actually represents a majority of the employees involved in a representation case." NLRB v. J. I. Case Co., 201 F.2d 597, 599, n. 3 (9 Cir. 1953); Kearney & Trecker Corp. v. NLRB, 209 F.2d 782 (7 Cir. 1953). The requirement of a showing of interest serves the limited purpose of enabling the Board to determine whether the surrounding circumstances justify an election, thereby screening out obviously frivolous petitions. Accordingly, the courts have been uniform in holding that "the validity of the showing of interest is for administrative determination and may not be litigated by the parties, either Employer or Union." NLRB v. Air Control Products of St. Petersburg, Inc., 335 F.2d 245, 250 (5 Cir. 1964); NLRB v. Swift & Co., 294 F.2d 285, 288 (3 Cir. 1961); Kearney & Trecker Corp. v. NLRB, supra; NLRB v. J. I. Case Co., supra.

When the Regional Director properly rejected the employer's objection and ordered an election, the Company filed a motion to "Reopen the Hearing and/or for Reconsideration." The basis of this motion was that predictions made by Union leaders as to the details of the yet unannounced election order conveyed an impression of favoritism by the Board toward the Union. No allegation of actual favoritism or collusion has

---

1. International Union, United Automobile, Aerospace & Agricultural, Implement Workers of America, UAW, AFL–CIO.

ever been made by the employer; it objects only to the suspected subjective impact upon employees who attended the meeting. After an *ex parte* administrative investigation, the Director denied the motion and held the election.

Although the Union won, the Company has refused to bargain with it or to supply it with relevant information. For these failures, the Board has found Intertype guilty of violating § 8(a) (5), 29 U.S.C.A. § 158(a) (5), and issued the order now before us.

In preparing to defend the 8(a) (5) charge below, Intertype caused sweeping subpoenas *duces tecum* to be issued on the Board's Regional Director and the Union's International Representative, demanding all files and memoranda pertaining to the election campaign and the Director's *ex parte* investigation and, in addition, a list of the Union's In-Plant Organizing Committee. The Trial Examiner quashed the subpoenas, thereby according to the Company, committing prejudicial error.

## I

In support of its challenge to the Trial Examiner's action suppressing the subpoena served on the Regional Director, Intertype points to an inconsequential discrepancy in statements obtained by the Director in the course of his *ex parte* investigation and appearing in his report.[2] The Company does not contend that this discrepancy itself created an impression of partiality in the minds of the employees, but only that it cast doubt on the reliability of the statements upon which the Regional Director based his decision. This uncertainty, Intertype maintains, necessitates a full hearing. Moreover, according to Intertype's contention, were the Director compelled to conduct a hearing and to call as witnesses those employees upon whose affidavits he relied, he would then have to produce the requested documents for purposes of cross-examination by the Company. La-

bor Board Rules and Regulations, § 102.-118. It is unreasonable, Intertype urges, to permit the Regional Director to avoid making these disclosures by conducting his investigation *ex parte*.

 This court has held, however, that "there is no requirement, constitutional or otherwise, that there be a hearing in the absence of substantial and material issues crucial to a determination of whether NLRB election results are to be accepted for purposes of certification." NLRB v. Bata Shoe Co., 377 F.2d 821, 826 (4 Cir. 1967). The burden lies upon the party seeking a hearing to proffer evidence establishing a *prima facie* case of "prejudice to the fairness of the election." *Bata Shoe,* supra at 826. Since time is often a critical factor in election cases, NLRB v. Sun Drug Co., 359 F.2d 408, 414 (3 Cir. 1966), it is essential that representation petitions be processed expeditiously with a view to holding the election as soon after the filing of the petition as is reasonably possible. Thus, to insist that the Board conduct a plenary hearing for every objection raised during representation proceedings would, by encouraging dissatisfied parties to engage in this dilatory tactic, prevent the prompt disposition of election cases. Consequently, the courts have upheld the Board's practice of conducting administrative investigations when it appears that the factual issues involved are not of such magnitude that they can be resolved only after a full hearing. See NLRB v. Sun Drug Co., supra; NLRB v. Joclin Manufacturing Co., 314 F.2d 627 (2 Cir. 1963).

 Here, Intertype has failed to carry its burden. Acting upon the Company's complaint, the Regional Director interviewed two Company supervisors and a non-unit employee to whom he was referred by the Company, as well as other employees unidentified in the record, who had attended the meeting. At the conclusion of his investigation, the Director

2. The single discrepancy brought to our attention is that while some employees recalled references at the meeting to an election to be conducted "between the 2d and 9th of June," others stated in their affidavits that Union representatives announced that the election could be expected in "25 to 30 days."

reported that those interviewed were unanimously of the impression that the information advanced at the meeting represented mere speculation of certain Union leaders based on past experience. To support his finding, the Regional Director pointed to the fact that the information was not completely accurate. Intertype, on the other hand, failed to produce a single witness at the unfair labor practice hearing to contradict the Director's finding. Nor has it offered a scintilla of evidence suggesting collaboration between the Board and the Union. Consequently, we find no error in the Board's refusal to conduct a full evidentiary hearing on this point.

 Since Intertype failed to establish its right to a hearing, the Trial Examiner properly quashed the subpoena served upon the Regional Director. The Labor Board's Rules and Regulations, §§ 102.-117(b) and 102.118, provide that except for limited purposes when a hearing is required, investigative case files are confidential and privileged against disclosure. The Seventh Circuit has noted, in upholding this regulation that, "[i]f an employee knows that statements made by him will be revealed to an employer, he is less likely, for fear of reprisal, to make an uninhibited and non-evasive statement." NLRB v. National Survey Service, Inc., 361 F.2d 199, 206 (7 Cir., 1966). The policy embodied in the rule is therefore strong and clear, and on the facts before us Intertype has failed to justify its avoidance.

 Equally without merit is the Company's attack on the revocation of its subpoena calling for a "list of the names of the [union's] In-Plant Organizing Committee." [3] The Union, understandably reluctant to disclose the committee roster, offered to submit the committee list to the Trial Examiner and to answer questions as to whether particularly named individuals were on

its committee. The Company, however, declined the offer. We fully agree with the Trial Examiner's conclusion that the procedure suggested by the Union would have sufficiently protected the employer's rights and that there was, therefore, no legitimate need to disclose the entire list.

## II.

 Next, Intertype urges that certain pre-election events precluded its employees' exercise of a free choice in the election. This attack upon the validity of the representation election is predicated on three alleged irregularities. First, the employer cites a union handbill circulated the day before the election which stated:

> "The results of your decision will not be so simple. Vote 'no' and you will give up the only chance you may ever have to vote on your future."

Intertype emphasizes that regardless of how employees might vote this would not be their *only* chance to vote on their future. The employer reasons that the statement therefore constitutes a substantial misrepresentation. The Regional Director, however, concluded that the insertion of the word "may" "indicates that a future chance to vote is entirely possible." Cognizant of the "well rounded exposition of pros and cons of unionization" communicated by both parties, he found in the circular no justification for upsetting the election results.

 As this court took occasion to note recently in Schneider Mills, Inc. v. NLRB, 390 F.2d 375, 378 (4th Cir. 1968), "[w]hether a representation election has been conducted under conditions compatible with the exercise of a free choice by the employees, is a matter which Congress has committed to the discretion of the Board." We find no abuse of that discretion in this case.

Objection is also registered against a rumor, circulated by known union adher-

---

3. The Company claimed the right to this information in order to establish that certain named employees whom it charged with circulating false rumors and with electioneering at the polls were, contrary to the finding of the Regional Director, members of the Union's Organizing Committee. The substance of these complaints is discussed hereinafter in Section II of this opinion.

ents, attributing pro-union statements to a particular, highly respected supervisor. The Regional Director found that an employee, Gordon Davis, had in fact made the statements to four employees immediately before the election. Investigation disclosed, however, that Davis was not an officer of the Union or on its Organizing Committee and that the Union was not responsible for his conduct. See Manning, Maxwell & Moore v. NLRB, 324 F.2d 857, 858 (5 Cir. 1963). Moreover, those who heard the rumor, the Company's own witnesses, testified that they were not influenced by it.

Again, evaluation of the probable effect of the comment, in light of the totality of circumstances surrounding the election, is a function of the Board. To hold that an improper comment by one not subject to the control of either party must necessarily invalidate a representation election would constitute an unreasonably strict standard that might well prevent the holding of a valid election. The test, as enunciated in the various circuits, is whether the rumor, even if improper, materially affected the election by precluding employees from exercising their own free choice. NLRB v. Blades Mfg. Co., 344 F.2d 998, 1002–1004 (8 Cir. 1965); NLRB v. Zelrich Co., 344 F.2d 1011, 1015 (5 Cir. 1965); Rockwell Mfg. Co., etc. v. NLRB, 330 F.2d 795 (7 Cir. 1964). The record readily supports the Board's finding that this rumor was innocuous.

Lastly, Intertype cites another episode—that while standing in line on election day, Hawkins, an employee, commented to his fellow employee Miller, "Why be up the creek without a paddle? They're going to win. You might as well vote yes." Hawkins was not a Union agent and no one other than Miller heard the remark. This is too trivial to merit serious consideration as a ground for nullifying the election.[4]

III

The Board ordered the employer to

"1. Cease and desist from:

(a) Refusing to bargain collectively in good faith concerning wages, hours, * * *.

(b) Refusing to furnish the Union with pertinent data concerning the employees in the unit, * * *.

(c) In any manner interfering with the efforts of the above-named Union to bargain collectively with the above-named Company on behalf of the employees in the above-described unit."

The specific target of the employer's objection is subsection (c), which it deems too broad and not justified by what it calls a "merely technical" violation. We disagree; this conventional language is not too broad or unsuited to this case. The Board has wide discretion to effectuate remedies and to fashion orders. NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 346, 349, 73 S.Ct. 287, 97 L.Ed. 377 (1953). The Supreme Court has stated the rule:

"Having found the acts which constitute the unfair labor practice the Board is free to restrain the practice and other like or related unlawful acts. * * * The breadth of the order * * * must depend upon the circumstances of each case, the purpose being to prevent violations, the threat of which in the future is indicated because of their similarity or relation to those unlawful acts which the Board has found to have been committed by the employer in the past." NLRB v. Express Publishing Co., 312 U.S. 426, 436, 439, 61 S.Ct. 693, 700, 85 L.Ed. 930 (1941).

The Board's order will be

Enforced.

---

4. In its brief and at oral argument, the Company also relied on the "tainted" showing of interest and the impression of partiality created at the Union meeting as factors contributing to the totality of circumstances preventing the exercise of free choice. For the reasons stated earlier in this opinion, we reiterate our conclusion that the Regional Director's findings to the contrary are amply supported in the record.