**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**HUDSON BERLIND CORPORATION, Respondent.**

**No. 493, Docket 73-2112.**

United States Court of Appeals, Second Circuit.

Argued Feb. 20, 1974.

Decided April 5, 1974.

Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John D. Burgoyne and Stanley R. Zirkin, Attys., N.L.R.B., Washington, D. C., on the brief, for petitioner.

Lawrence Rosenbluth, New York City (Rosenbluth & Rosenbluth, New York City, on the brief), for respondent.

Before LUMBARD, FRIENDLY and TIMBERS, Circuit Judges.

LUMBARD, Circuit Judge:

The National Labor Relations Board petitions this court for enforcement of its order of May 2, 1973, which found that the Hudson Berlind Corp. violated

the National Labor Relations Act when it entered into a collective bargaining agreement with Local 222 of the International Production, Service and Sales Employees Union at a new, consolidated facility. 203 N.L.R.B. No. 63. The Board concluded that by signing this agreement Hudson Berlind violated its duty under the Act to remain neutral until its employees' choice of bargaining representative at the new facility was settled. For reasons set forth below, we enforce the Board's order.

H. Berlind, Inc. was engaged in the wholesale distribution of household goods and related products with its principal place of business at Floral Park, New York. Its ten warehouse employees were represented by Local 810, Steel, Metals, Alloys, and Hardware Fabricators and Warehousemen, affiliated with the International Brotherhood of Teamsters. Local 810's agreement with H. Berlind had an expiration date of April 18, 1972.

Hudson Housewares Corp. was also in the business of wholesale distribution of household goods. Its principal place of business was Brooklyn and its thirty-one warehouse employees were represented by Local 222, affiliated with the International Production, Service and Sales Employees Union. Local 222's agreement with Hudson Housewares was set to expire on March 15, 1972.

In September 1971 H. Berlind was purchased by Greenman Brothers, Inc. Greenman Brothers then purchased Hudson Housewares in December 1971. From the outset, Greenman Brothers intended to consolidate the two operations in a new facility at Hicksville, New York, about 40 miles from the Brooklyn location. In anticipation of the consolidation, Hudson Housewares was renamed Hudson Berlind Corp. in January 1972.

Since Local 222 represented a larger number of warehouse employees than Local 810, Hudson Berlind decided to recognize Local 222 as the bargaining representative of its warehouse employees at the new Hicksville facility. Without notifying Local 810 of the planned consolidation, Hudson Berlind opened negotiations with Local 222. On January 31, 1972, they signed a three-year agreement effective on March 15, 1972, which recognized Local 222 as the bargaining representative of warehousemen at Hudson Berlind facilities in the New York metropolitan area. The agreement contained a union-security clause which required all warehousemen to join Local 222 within thirty days of their hiring.

From January 31 to March 10 Hudson Berlind transferred its operation from Brooklyn to Hicksville. During this period, ten of the employees who had worked in Brooklyn left the employ of Hudson Berlind and were replaced by ten new members. Thus, when the transfer to Hicksville was complete on March 10, twenty-one of the thirty-one warehousemen at Hicksville had previously been Local 222 members at Brooklyn.

Meanwhile, in February Local 810 gave notice that it wished to renegotiate its contract. The former owner of H. Berlind informed the union for the first time that Greenman Brothers had purchased the company and would soon be in touch with Local 810's officers. At a meeting held on February 24, Greenman Brothers' attorneys told Local 810's president that Greenman Brothers planned to close down the Floral Park operation and move it to Hicksville and that Local 222 would represent the warehousemen there. The attorneys agreed to send Local 810 a copy of the Local 222 agreement and a seniority list of the Brooklyn employees.

Subsequently on March 15 Local 810 filed the unfair labor practice charges at issue here. Local 810 also solicited authorization cards from former Hudson Houseware employees who had transferred to Hicksville and on April 7 filed a representation petition with the Board. This petition has been held in abeyance pending disposition of the unfair labor practice charges.

At the end of May operations at Floral Park were terminated, but Hudson Berlind offered employment at Hicksville to all the warehousemen who had worked at Floral Park. All ten of the Floral Park warehousemen accepted employment at Hicksville, beginning in the first week of June.

Overruling the recommended decision of its administrative law judge, a three-member panel of the National Labor Relations Board found that Hudson Berlind violated the Act by recognizing Local 222 as the bargaining agent of the Hicksville warehousemen. The Board initially held that the Hicksville facility was not a relocation or an accretion of the Brooklyn bargaining unit, but rather a new bargaining unit. The Board then found that there was a "real question" concerning which union would be chosen by the Hicksville warehousemen to represent them at the time the contract of January 31 was signed and that Berlind had an obligation under the decision of Midwest Piping & Supply Co., 63 N.L.R.B. 1060 (1945), to remain neutral as between the unions until the representation question is settled. Hudson Berlind's failure to remain neutral was held to be unlawful aid to Local 222 in violation of § 8(a)(2) of the Act, 29 U.S.C. § 158(a)(2). The inclusion of the union-security clause in the contract was further held to violate §§ 8(a)(1) and (a)(3) of the Act, 29 U.S.C. §§ 158(a)(1), (a)(3).[1]

The Board ordered Hudson Berlind to cease and desist from aiding Local 222 and from requiring membership in Local 222 as a condition of employment in violation of the Act. Hudson Berlind was also ordered to withdraw recognition of Local 222 as bargaining agent of its Hicksville employees and to return to its warehousemen, except those who joined Local 222 prior to the January 31 agreement, the money paid by them or withheld from them for union dues and initiation fees.

■ We realize that the consolidation of separate operations can lead to difficult problems of labor relations for employers, see, e. g., the situation in Wheland Co., 120 N.L.R.B. 814 (1958), enforcement denied, 271 F.2d 122 (6th Cir. 1959). Be that as it may, we find substantial evidence to support the Board's finding that there was a real question concerning representation when Hudson Berlind signed the agreement with Local 222 and its conclusion that the actions Hudson Berlind chose to take violated the Act. Hudson Berlind does not quarrel with the principle of Midwest Piping, which we have approved on several occasions, see, e. g., N.L.R.B. v. Midtown Service Co., 425 F.2d 665 (2d Cir. 1970); Welch Scientific Co. v. N.L.R.B., 340 F.2d 199 (2d Cir. 1965); N.L.R.B. v. National Container Corp., 211 F.2d 525 (2d Cir. 1954), but argues that the principle does not apply in this case.[2] We cannot agree.

First, the Board found that Hicksville was a separate bargaining unit and not a relocation or accretion of the Brooklyn unit. We have previously said that the Board has "wide discretion in determining the appropriate bargaining unit."

1. The Board held in the alternative that since the agreement signed with Local 222 dealt with the terms of employment of Hicksville employees before any of them worked there, it was a prehire contract in violation of §§ 8(a)(1) and (a)(2) of the Act. Since we enforce the Board's order on the grounds mentioned in the text, there is no need for us to determine the validity of this alternative holding.

2. Hudson Berlind also argues that we cannot enforce the Board's order because the Board never found that it was a successor to H. Berlind and therefore it had no duty to bargain with Local 810. about the terms of employment at Hicksville. Hudson Berlind relies on cases which hold that an employer who is a successor must recognize and bargain with the union that represented his predecessor's employees. See, e. g., N.L.R.B. v. Burns International Security Services, Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972). This reliance is misplaced. The Board did not hold that Hudson Berlind had a duty to recognize Local 810 but rather that it had a duty not to recognize any union until the representation question at Hicksville was settled.

N.L.R.B. v. Masters-Lake Success, Inc., 287 F.2d 35, 36 (2d Cir. 1961). See also Packard Motor Car Co. v. N.L.R.B., 330 U.S. 485, 491–492, 67 S.Ct. 789, 91 L.Ed. 1040 (1947). There is substantial evidence to support the Board's finding that Hicksville was a separate unit since it was a consolidation of two previously separate units and some distance away from each of them. See General Electric Co., 170 N.L.R.B. 1272 (1968); National Carloading Corp., 167 N.L.R.B. 801 (1967); Kroger Co., 155 N.L.R.B. 546 (1965). Because Hicksville was a separate bargaining unit, the cases which Hudson Berlind cites that rely on a presumption of continuing majority status for a previously certified union within the same bargaining unit are not on point. See N.L.R.B. v. Swift & Co., 294 F.2d 285 (3rd Cir. 1961); Harpeth Steel, Inc., 208 N.L.R.B. No. 84 (1974). See also N.L.R.B. v. Midtown Service Co., supra.

■ Second, there is substantial evidence to support the Board's finding that there was a real question concerning representation at the time of the signing of the contract. See Empire State Sugar Co. v. N.L.R.B., 401 F.2d 559 (2d Cir. 1968); Fruehauf Trailer Co., 162 N.L.R.B. 195 (1966); Purolator Products, Inc., 160 N.L.R.B. 80 (1966); Schreiber Trucking Co., 148 N.L.R.B. 697 (1964). Hudson Berlind argues that there was no real question because the Local 222 unit was larger than the Local 810 unit. It is true that Local 222 had 31 members in Brooklyn and Local 810 had only ten members at Floral Park, but this numerical superiority was not sufficiently predominate to remove any real question concerning representation. Cf. National Carloading Corp., supra; Purolator Products, Inc., supra. The Hicksville facility was about 40 miles from the Brooklyn warehouse and it was not clear how many employees would choose to transfer from Brooklyn and Floral Park to Hicksville when Hudson Berlind signed the agreement with Local 222. Cf. Cooper Thermometer Co. v. N.L.R.B., 376 F.2d 684 (2d Cir. 1967). There was, therefore, no assurance that Local 222's predominance would continue.

■ Hudson Berlind also argues that there was no real question concerning representation because Local 810 made no demand to represent the Hicksville employees, but the Board found that Local 810's officers did not learn of the planned consolidation until after Hudson Berlind signed the agreement with Local 222 on January 31, 1972. One can hardly expect Local 810 to react to a situation which it did not know about. Cf. N.L.R.B. v. Burke Oldsmobile, Inc., 288 F.2d 14, 16 (2d Cir. 1961). We, therefore, cannot set aside the Board's finding on this issue.

■ Since there was a real question concerning representation at the time Hudson Berlind entered into the agreement with Local 222, the Board properly found that Hudson Berlind's conduct violated § 8(a)(2) of the Act. Empire State Sugar Co. v. N.L.R.B., supra. The Board was also correct in finding that the presence of a union-security clause in the agreement violated §§ 8(a)(1) and (a)(3). N.L.R.B. v. Fiore Brothers Oil Co., 317 F.2d 710 (2d Cir. 1963); N.L.R.B. v. Revere Metal Art Co., 280 F.2d 96, 100 (2d Cir.), cert. denied, 364 U.S. 894, 81 S.Ct. 225, 5 L.Ed.2d 189 (1960). Accordingly, a judgment will be entered enforcing the Board's order.