764 F.2d 182
 119 L.R.R.M. (BNA) 3021, 103 Lab.Cas. P 11,531
 HADDON HOUSE FOOD PRODUCTS, INC. and Flavor Delight, Inc.,
Petitioners in No. 84-3445,
v.
NATIONAL LABOR RELATIONS BOARD, Petitioner in No. 84-3537,
and
Teamsters Local Union No. 115 a/w International Brotherhood
of Teamsters, Chauffeurs, Warehousemen and Helpers
of America, Intervenor,
and
United Food and Commercial Workers International Union,
AFL-CIO, Local 80, Intervenor.
 Nos. 84-3445, 84-3537.
 United States Court of Appeals,
Third Circuit.
 Argued April 30, 1985.
Decided June 12, 1985.
Rehearing and Rehearing In Banc Denied Aug. 22, 1985.
 
 Jonathan G. Axelrod (Argued), Beins, Axelrod & Osborne, P.C., Washington, D.C., Norton Brainard, Teamsters Local Union No. 115, Philadelphia, Pa., for intervenor, Teamsters Local Union No. 115.
 Nicholas W. Clark (Argued), Edward P. Wendel, Asst. Gen. Counsel, United Food and Commercial Workers Union, Washington, D.C., for intervenor, Local 80.
 Julius M. Steiner (Argued), Howard K. Trubman, Larry Besnoff, Pechner, Dorfman, Wolffe, Rounick & Cabot, Philadelphia, Pa., for Haddon House Food Products, Inc. and Flavor Delight, Inc.
 David A. Fleischer (Argued), N.L.R.B., Washington, D.C., Rosemary M. Collyer, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, for N.L.R.B.
 Before GIBBONS and HIGGINBOTHAM, Circuit Judges and NEWCOMER, District Judge.*
 OPINION OF THE COURT
 GIBBONS, Circuit Judge:
 
 
 1
 Haddon House Food Products, Inc. and Flavor Delight, Inc. (the employers) petition pursuant to section 10(f) of the National Labor Relations Act, 29 U.S.C. Sec. 160(f) (1982), to review an unfair labor practice order issued by the National Labor Relations Board, reported at 269 NLRB No. 338 (1984). The Board has filed a cross-application for enforcement both against the employers and against Local 80, Food and Allied Service Workers, chartered by United Food and Commercial Workers, AFL-CIO (Local 80). Local 80 has intervened, as has the charging party before the Board, Local Union No. 115, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (Local 115). We enforce the Board's order.
 
 I.
 The 1975 Proceedings
 
 2
 The employers are engaged in the manufacture, sale, and distribution of food products at premises in Medford, New Jersey. They have common management and unified labor relations policies, and comprise a single employer for purposes of the National Labor Relations Act. In November of 1975, Local 115 obtained a substantial number, although not a majority, of union authorization cards from employees in the Medford bargaining unit. On November 19, 1975, Local 115 filed a petition for a representation election. On November 21, 1975, Local 115 filed unfair labor practice charges against the employers. The election petition was held in abeyance by the Board pending resolution of the unfair labor practice charges.
 
 
 3
 On June 12, 1979, the Board resolved the unfair labor practice charges against the employers. The Board found that the employers had responded to Local 115's organizational campaign by engaging in numerous violations of section 8(a)(1) and (3) of the Act, 29 U.S.C. Sec. 158(a)(1) and (3) (1982). These violations included discharging eight employees for engaging in union activities, the refusal to reinstate fourteen unfair labor practice strikers, and widespread threats of discharge for engaging in protected activities. The Board ordered the employers to cease and desist from engaging in the unfair labor practices it found, and from in any other manner interfering with, restraining, or coercing their employees in the exercise of their statutory rights. It ordered the employer to offer reinstatement with back pay to the eight discharged employees and the fourteen unreinstated strikers.
 
 
 4
 The Board also ordered the usual notice posting, and directed the employers to grant Local 115 and its representatives access to employer bulletin boards, and to nonwork areas in the plant during employees' nonwork time. It ordered the employers to permit Local 115's representatives the opportunity to deliver a thirty minute speech to employees during working hours at least forty-eight hours but not less than ten working days before any Board representation election in which Local 115 participated. These access remedies were ordered to dissipate the atmosphere of fear created by the employers' unlawful conduct, and in lieu of a bargaining order. A bargaining order was not ordered because Local 115, while obtaining a sufficient number of authorization card signatures for a representation election, had not obtained a card majority. The Board's order, reported at 242 NLRB 1057 (1979), was substantially enforced by the Court of Appeals for the District of Columbia Circuit. Teamsters Local 115 v. NLRB, 640 F.2d 392 (D.C.Cir.), cert. denied, 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 102 (1981). That court rejected both Local 115's contention that a bargaining order should have been entered, and the employers' contention that access remedies were inappropriate. The judgment enforcing the Board's order was issued on November 4, 1981. The order had not, in the meantime, been fully complied with.
 
 II.
 The 1981 Proceedings
 
 5
 Following the decision of the Court of Appeals enforcing the Board's order, but while a petition for certiorari seeking Supreme Court review of that decision was pending, Local 80, about June 15, 1981, commenced an organizing campaign by leafletting employees at the Medford plant. On June 29, Local 80 demanded recognition. The American Arbitration Association conducted a union authorization card check and certified to the employers that a majority of employees in the bargaining unit had signed Local 80 cards. Local 115 was not notified of the card check, and the American Arbitration Association was not notified of Local 115's pending representation election petition, or of the prior unfair labor practices. On July 8, the employers recognized Local 80, and on July 24, entered into separate collective bargaining agreements, one covering production employees, and one covering warehouse employees. Both Local 80 contracts contain union-security clauses requiring all covered employees to become members of that local.
 
 
 6
 By the time the employers recognized Local 80 and entered into collective bargaining agreements with it, they had offered reinstatement to all of the eight dischargees, and to eleven of the fourteen unfair labor practice strikers. They had not complied, however, with any of the Board's remedial notice and access requirements. Indeed they did so thereafter only when the Board instituted contempt proceedings.
 
 
 7
 The Board found that the employers violated sections 8(a)(2) and (1) of the Act, 29 U.S.C. Sec. 158(a)(2) and (1) (1982), when they entered into collective bargaining agreements with Local 80 at a time when it did not represent an uncoerced majority in the bargaining units, while Local 115's representation petition was pending, and while the 1975 unfair labor practices remained unremedied. The Board also found that Local 80 violated section 8(b)(1)(A) of the Act, 29 U.S.C. Sec. 158(b)(1)(A), by accepting such recognition. Moreover, the Board found that the employers violated section 8(a)(3) of the Act, 29 U.S.C. Sec. 158(a)(3), and that Local 80 violated section 8(b)(2) of the Act, 29 U.S.C. Sec. 158(b)(2), by entering into collective bargaining agreements containing union-security clauses at a time when Local 80 was not entitled to recognition.
 
 
 8
 To remedy these violations the Board ordered the employers and Local 80 to cease and desist from the unfair labor practices found, and to refrain from interfering with, restraining, or coercing employees in any way in the exercise of their statutory rights. The Board also ordered that the employers withdraw recognition from Local 80 unless it is certified by the Board after an election, and ordered the employers and Local 80 to reimburse employees for all initiation fees, dues, assessments or other payments made pursuant to the unlawful union-security clause. Finally, the Board reaffirmed most of the access remedies ordered for the benefit of Local 115 in the 1975 proceedings since the record did not show that there had been compliance.
 
 III.
 Recognition of Local 80 Violated the Act
 
 9
 The Board's holding that the employers violated the Act by recognizing Local 80 rests on two alternative grounds: that a real question concerning recognition existed at the time of such recognition, and that Local 80 did not represent an uncoerced majority. Both grounds, either of which would justify the order to withdraw recognition, are challenged by the employers and Local 80. We address them separately.A. The Real Question Concerning Representation
 
 
 10
 In Midwest Piping and Supply Company, 63 NLRB 1060 (1945), the Board held that an employer rendered unlawful assistance when it entered into a collective bargaining agreement with one of two rival unions at a time when a genuine question existed as to which union represented a majority of its employees. That basic principle is not in dispute. What the employers and Local 80 do dispute, however, is the Board's application of the Midwest Piping rule to this case. They rely on a series of cases in this court in which we refused to enforce Board orders requiring withdrawal of recognition of unions holding card majorities. Suburban Transit Corporation v. NLRB, 499 F.2d 78 (3d Cir.1974); NLRB v. Air Master Corporation, 339 F.2d 553 (3d Cir.1964); NLRB v. Swift and Company, 294 F.2d 285 (3d Cir.1961). These cases can be fairly read as disapproving a tendency in the Board to read Midwest Piping so broadly as to prohibit a neutral employer from ever recognizing one of two rival unions absent a Board certification. They do not cast doubt, however, on the soundness of the basic rule. "To recognize one of two competing unions while the employees' choice between them is demonstrably in doubt, is an unfair labor practice under what the courts have accepted as the normal and proper application of the Midwest Piping doctrine." NLRB v. Air Master Corp., 339 F.2d at 557. We simply have refused to find a genuine question concerning representation when one union is an incumbent, even though the rival has filed a representation petition, or has unequivocally demonstrated that it has the support of an uncoerced majority.
 
 
 11
 In an effort to clarify the circumstances in which neutral employers should refrain from recognizing one of two rival unions, the Board, in 1982, reconsidered the Midwest Piping doctrine. In RCA Del Caribe, Inc., 262 NLRB 963, 965 (1982), the Board held that "the mere filing of a representation petition by an outside, challenging union will no longer require or permit an employer to withdraw from bargaining or executing a contract with an incumbent union." The Board explained that if there was an existing collective bargaining relationship an employer could not maintain the neutral posture required by the Midwest Piping rule since a refusal to bargain with an incumbent union might be perceived as favoring the challenger. Thus, employer neutrality was best approximated by maintaining the status quo pending certification of a challenger union. On the same day the Board considered a case in which two unions were seeking initial recognition. In Bruckner Nursing Home, 262 NLRB 955, 957 (1982), the Board, taking note of the expressed preference of this court and others for a rule which permits employers to contract with a union holding cards from an uncoerced majority, held that it would no longer find a section 8(a)(2) violation, when two unrecognized unions are competing and when the employer recognizes the union that represents an uncoerced, unassisted majority. At the same time, however, the Board reaffirmed its position that "once notified of a valid petition, an employer must refrain from recognizing any of the rival [non-incumbent] unions." 262 NLRB at 957.
 
 
 12
 The Board's decision and order in this case is an application of the Bruckner qualification of the Midwest Piping doctrine. The effect of the Bruckner rule is that when faced with two rival non-incumbent unions an employer is free to recognize that union that is authorized by an uncoerced majority at any time until the filing of a valid representation petition. A valid representation petition is defined as one which would entitle the petitioning union to an election. An election will not be held unless the petitioner has at least 30% support. NLRB Statement of Procedure, Sec. 101.18(a), 29 CFR 101.18(a). See NLRB v. J.I. Case Co., 201 F.2d 597, 598-99 (9th Cir.1953). Thus, the Board's present position is that an employer may always bargain with an incumbent union until a new union is certified, and that if there is no incumbent an employer may recognize a union holding cards from an uncoerced majority until a representation petition is filed by a rival union authorized by at least 30% of the unit employees.
 
 
 13
 The employers and Local 80 contend that the Bruckner rule is inconsistent with Hedstrom Company v. NLRB, 558 F.2d 1137 (3d Cir.1977), in that it amounts to an application of the "continuing demand" concept, under which an employer might be guilty of an unfair labor practice by failing to recognize a union that obtains majority status some time after an initial demand for recognition. Hedstrom is not on point. The Board did not obligate the employers to recognize either local union, and did not find an unfair labor practice in the employers' failure to bargain with Local 115. There is no "continuing demand" issue in this case.
 
 
 14
 The employees and Local 80 also contend that the Bruckner qualification of the Midwest Piping doctrine is in effect a non-acquiscence by the Board in our holding in Suburban Transit, Air Master and Swift. See Allegheny General Hospital v. NLRB, 608 F.2d 965 (3d Cir.1979). We disagree. The Board makes clear in Bruckner that it has in good faith accommodated its rule on determining questions concerning representation to the concerns this court expressed in those cases. The Bruckner rule is a satisfactory accommodation of the sometimes conflicting policies of prompt recognition of majority collective bargaining representatives and of uncoerced free choice in the selection of such representatives. Authorization cards are not a totally reliable indication of employee free choice, for when competing unions solicit, many employees may sign cards for both. When the rival union has cards for 30%, there is a real possibility of such duplication. Drawing the line at the point at which one of two unrecognized rivals files a representation petition on behalf of 30% of the employees in the bargaining unit has the additional advantage of providing clear guidance to employers. Thus, we hold that the Board did not err when it applied the Bruckner test in this case. Local 115 had on file a valid representation petition known to the employers when they recognized Local 80. Thus, the employers violated section 8(a)(2). Local 80 violated 8(b)(1)(A) by accepting such recognition even if, as it asserted before the Board, it was unaware of Local 115's pending representation petition. See International Ladies' Garment Workers' Union v. NLRB, 366 U.S. 731, 738-39, 81 S.Ct. 1603, 1607-1608, 6 L.Ed.2d 762 (1961). Moreover a collective bargaining agreement with an unlawfully recognized union containing a union-security clause violates sections 8(a)(3) and 8(b)(2). NLRB v. Security-Columbian Banknote Co., 541 F.2d 135, 138, 142 (3d Cir.1976).
 
 B. The Uncoerced Majority
 
 15
 Our approval of the Board's application, in this case, of the Bruckner rule is dispositive of the petitions for review insofar as they challenge the order to withdraw recognition from Local 80. The Board also relied alternatively upon the ongoing effects of the unfair labor practices still unremedied which it found in the 1975 proceedings. The employers and Local 80 challenge this reliance principally because of the passage of time. Throughout most of that time, however, the employers and Local 115 were engaged in protracted litigation. The Board's finding that the effects of the 1975 unfair labor practices made unfettered employee free choice unlikely while those practices remained unremedied is supported by substantial evidence in the record as a whole. The Board did not err in holding that recognition of a union which lacks uncoerced majority support violates section 8(a)(2) of the Act. Paul M. O'Neill International Detective Agency, Inc. v. NLRB, 280 F.2d 936, 938 n. 2, 939-46 (3d Cir.1960).IV.
 
 
 16
 The Board's Remedy is Not an Abuse of Discretion
 
 
 17
 The employers contend that the Board abused its discretion in providing, in the 1981 proceedings, access remedies substantially similar to those provided in the 1975 proceedings. Local 80 contends that the Board abused its discretion in ordering reimbursement of dues. Neither contention has merit.
 
 
 18
 The employers' unlawful recognition of Local 80 effectively nullified the access provisions of the prior proceeding. By the time access was permitted for Local 115, Local 80 had already recognized and entered into collective bargaining agreements with its rival. The unlawful recognition compounded the effects of the prior unfair labor practices, which were egregious and pervasive. We find no abuse of discretion in the order providing access remedies to Local 115 so that the effects of those unfair labor practices might be nullified.
 
 
 19
 As to the dues reimbursement remedy, we are taught by the Supreme Court that such an order "should stand unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act." Virginia Electric & Power Company v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 1218, 87 L.Ed. 1568 (1942). No such showing can be made here. Indeed the reimbursement of dues remedy appears particularly appropriate for restoration of a climate of neutrality in which a free choice may be made among the unions competing for representation, or even for no union.
 
 V.
 Conclusion
 
 20
 The Board's application of its Bruckner qualification to Midwest Piping is consistent with the policies of the Act. The remedies imposed are not an abuse of discretion. The Board's order will, therefore, be enforced in full and the petitions for review will be denied.
 
 
 
 *
 Hon. Clarence C. Newcomer, United States District Judge for the Eastern District of Pennsylvania, sitting by designation