## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## SAUK VALLEY MANUFACTURING CO., INC., Respondent.

### No. 72–1569.

United States Court of Appeals, Ninth Circuit.

Oct. 29, 1973.

1128

Paul J. Spielberg (argued), Peter G. Nash, Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, NLRB, Washington, D. C., Roy O. Hoffman, Director, Region 20, San Francisco, Cal., Elliott Moore, Steven R. Semler, NLRB, Washington, D. C., for petitioner.

John W. Holmdahl (argued), Holmdahl & Ross, Oakland, Cal., Allen W. Teagle (argued), Nancy L. Ober, Littler, Mendelson & Fastiff, San Francisco, Cal., for respondent.

Before HAMLIN, ALDRICH* and HUFSTEDLER, Circuit Judges.

## OPINION

HAMLIN, Circuit Judge:

This case is before us upon application of the National Labor Relations Board (Board), petitioner, pursuant to section 10(e) of the National Labor Relations Act (the Act), as amended, 61 Stat. 136, 73 Stat. 519, 29 U.S.C. § 151 et seq. for enforcement of its order issued against the Sauk Valley Manufacturing Company (Company), respondent, on January 31, 1972.[1] The Board has found the Company in violation of section 8(a)(1) and (5) of the Act by its refusal to bargain collectively with the Union,[2] subsequent to the latter's certification by the Board as the exclusive bargaining representative of the Company's employees, following election proceedings. We grant enforcement.

In November, 1970, the Union filed a representation petition with the Board, seeking certification as the exclusive representative of the Company's production and maintenance employees. Pursuant to a directive by the Regional Director, a secret ballot election was held among unit employees on April 8 and 9, 1971, at the Company's place of business.[3]

The election resulted in a vote of 24 to 8 in favor of the Union, with one ballot challenged. The Company filed timely objections to the election, alleging that numerous material misrepresentations of fact and procedural irregularities on the Union's part prejudicially affected the election outcome.

In June, 1971, subsequent to an administrative investigation where the parties were allowed to submit evidence, the Regional Director concluded that the Company's objections were without merit, and certified that the Union had been properly elected by a majority of employees. No evidentiary hearing was held on the objections. In August, 1971, the Board denied the Company's requested review.

The Company declined to bargain with the Union, in order to obtain judicial review of the Board's actions. Subsequent to the filing by the Union with the Board of charges alleging the Company's failure to recognize or bargain with it as the certified bargaining representative of the Company's employees, the Regional Director issued a complaint, accusing the Company of section 8(a)(1) and (5) violations. The Company admitted its refusal to bargain, but denied the representative status of the

---

* Honorable Bailey Aldrich, Senior United States Circuit Judge, Boston, Massachusetts, sitting by designation.

1. The Board's Decision and Order are reported at 195 NLRB No. 52.

2. Sheet Metal Production Workers, Local Union No. 355, AFL–CIO.

3. The Company is engaged in the manufacture of barbed wire in Oakland, California.

Union and the commission of unfair labor practices, again alleging prejudicial improprieties in the conduct of the election.

In December, 1971, the Trial Examiner granted the Board's prayer for summary judgment, concluding that the Company's refusal to bargain constituted section 8(a)(1) and (5) violations. On review, the Board affirmed and issued an order requiring the Company to cease and desist from the unfair labor practices and, affirmatively, to bargain collectively upon request with the Union, and to post appropriate notices.

### Substantive Issues

The Company raises numerous issues purportedly warranting our denial of the Board's enforcement petition. Our review of the substantive issues, however, is preceded by a brief examination of the scope of our review.

As we recently noted, "[t]he courts review election conduct to determine whether it inhibited the employees' free choice in selecting their bargaining representatives." N.L.R.B. v. G. K. Turner Associates, 457 F.2d 484, 487 (9 Cir. 1972). The applicable standard of review is, however, circumscribed. It is well established that "Congress has entrusted the Board with a wide discretion in conducting and supervising elections." N.L.R.B. v. W. S. Hatch Co., Inc., 474 F.2d 558, 561 (9 Cir. 1973); N.L.R.B. v. A. J. Tower Co., 329 U.S. 324, 330, 67 S.Ct. 324, 91 L.Ed. 322 (1946); N.L.R.B. v. Waterman S.S. Corp., 309 U.S. 206, 226, 60 S.Ct. 493, 84 L.Ed. 704 (1940). Accordingly, the party challenging the election results "carries a heavy burden in charging that * * * coercion prevented a fair election," Shoreline Enterprises of America, Inc. v. N.L.R.B., 262 F.2d 933, 942 (5 Cir. 1959), for evidence must be furnished overcoming the presumption that "ballots cast under the safeguards provided by Board procedure reflect the true desires of the participating employees." N.L.R.B. v. Zelrich Co., 344 F.2d 1011, 1015 (5 Cir. 1965). See also General Shoe Corp., 77 N.L.R.B. 124, 126 (1968).

In International Tel. & Tel. Corp. v. N.L.R.B., 294 F.2d 393, 395 (9 Cir. 1961), we explained the rationale supporting restrictive judicial review in this area:

"As established by Congress, the NLRB is in a particularly good position to expedite the process of choosing representatives and thereby promoting collective agreements fairly reflective of the wishes of a majority of workers. Repeated appellate court litigation without allowing considerable discretion on the part of the NLRB thwarts this policy by nurturing continuing uncertainty and argument between the parties where decision— even occasionally erroneous decision —tends to disperse attention."

We examine the Company's substantive arguments mindful, therefore, of the limited nature of our review.

The Company initially argues that "the Union, by its agents and representatives, categorically promised employees that they would receive specific benefits, including a Union contract, higher wages, sick leave and a medical and dental plan, if the Union won the election." In purportive support of this charge, the Company presented the affidavits of two employees.

Employee Edwards stated:

"I was told by other employees who had been to Union meetings that if the Union won the election we would have a Union contract and that the Union had promised this and that the Union promised better pay, sick leave, medical and dental plans if the employees voted in the Union."

Employee Caldwell stated:

"I was told by other employees that if the Union won the election, we would have a Union contract, there would be better pay, a medical and dental plan. I also had the impression myself from what I heard, that there would be a Union contract."

The Board has traditionally exercised restraint in setting aside representative elections on claims of inaccurate union propaganda. Elections will be set aside

"* * * only where there has been a misrepresentation or other similar campaign trickery, which involves a substantial departure from the truth, at a time which prevents the other party or parties from making an effective reply, so that the misrepresentation, whether deliberate or not, may reasonably be expected to have a significant impact on the election." Hollywood Ceramics Company, Inc., 140 NLRB 221, 224 (1962). *See also* Stewart-Warner Corp., 102 NLRB 1153, 1158 (1953).

This court has adopted the Board's test:

"[W]e have held that an election will be set aside only where one party has misrepresented material facts, the other had no opportunity to reply, and the resulting distorted presentation significantly impaired the election process." N.L.R.B. v. G. K. Turner Associates, *supra*, 457 F.2d at 487, citing N.L.R.B. v. Winchell Processing Corp., 451 F.2d 306 (9 Cir. 1971). *See also* Gallenkamp Stores Co. v. N.L.R.B., 402 F.2d 525, 533–534 (9 Cir. 1968).

Under the applicable test, noted *supra*, we are unable to conclude that the statements contained in the affidavits of employees Caldwell and Edwards constituted grounds for voiding the election.

Initially, we note that these statements cannot be labeled material misrepresentation. G. K. Turner, *supra*, or substantial departures from the truth, *Hollywood Ceramics, supra*. Unions exist for the purpose, *inter alia*, of securing higher pay, increased benefits, and collective bargaining for its membership. And most representations to this effect are indigenous to any representation election. Indeed, courts have consistently condoned a certain degree of inaccuracy and ambiguity in election campaigning propaganda, recognizing that "[p]rattle rather than precision is the dominating characteristic of election publicity * * *." Olson Rug Company v. N.L.R.B., 260 F.2d 255, 257 (7 Cir. 1958). *See e. g.* N.L.R.B. v. Golden Age Beverage Co., 415 F.2d 26, 30–31 (5 Cir. 1969); Baumritter Corp. v. N.L.R.B., 386 F.2d 117, 119–120 (1 Cir. 1967); Wilson Athletic Goods Mfg. Co. v. N.L.R.B., 164 F.2d 637, 639–640 (7 Cir. 1947).[4]

In addition to failing to show that the statements in issue constituted material misrepresentations, the Company has failed to attribute these allegations to union representatives. Neither Caldwell nor Edwards asserted that they were told of the alleged benefits by union officials. The statements are therefore patently hearsay, and their credibility as the official union position is highly questionable. The Board, with judicial concurrence, has long accorded less weight to conduct which, as here, is attributable to neither the union nor the employer.[5] Orleans Manufacturing Co.,

---

4. The Company's reliance upon N. L. R. B. v. Houston Chronicle Publishing Co., 300 F. 2d 273 (5 Cir. 1962) and N. L. R. B. v. Southern Foods, Inc., 434 F.2d 717 (5 Cir. 1970) is misplaced. In both these cases, the misrepresentations were unquestionably attributable to union officials. Further, the misrepresentations there in issue were made at a time immediately preceding the election, thereby affording the Company no opportunity to rebut the misstatements.

Here, the misstatements were not attributable to the union, and the Company makes no assertion of inadequate rebuttal opportunity.

5. This policy credits employees with the ability to give true weight to the possibly impulsive allegations of fellow employees induced by the heat of a campaign. The Board recognizes that because, as a practical matter, unions and employers cannot prevent misdeeds or misstatements by those over whom they have no control, a rule which gives the "same weight to conduct by third persons as to conduct attributable to the parties [would] substantially diminish * * * the possibility of obtaining quick and conclusive election results * * *." Orleans Manufacturing Co., *supra*, 120 NLRB at 633.

120 NLRB 630, 633 (1958); Allied Plywood Corp., 122 NLRB 959, 961 (1959). *See* N.L.R.B. v. Griffith Oldsmobile, Inc., 455 F.2d 867, 870 (8 Cir. 1972) and cases cited therein.

The Company makes several additional objections, none of which we find meritorious.

■ The Company alleges that the Board's form "Notice of Election" confused employees as to their rights not to join a union. The notice incorrectly implies that an employee has an absolute right to decline to join a union, when in fact this right may be limited where a security clause is negotiated. *See* section 7 of the Act, 29 U.S.C. § 157. We have previously held, however, that although such a notice of election is "potentially misleading, [it] does not provide a basis for setting aside a representation election." N.L.R.B. v. G. K. Turner Associates, *supra*, 457 F.2d at 487. *Cf.* Overland Hauling, Inc., 168 NLRB 870 (1967).

■ A further Company objection concerns allegations that the Union misled the employees by indicating that a union victory would result in recognition of the union on behalf of all hourly non-supervisory company employees, when actually the appropriate unit specifically excluded office clerical employees. We find this argument specious. The Company has failed to submit any evidence of employee confusion on this issue, and there is no indication that the misrepresentation affected the election outcome. Further, the above misrepresentation was received by the employees more than a week prior to the election date, affording the Company ample opportunity to reply. *See Hollywood Ceramics, supra; G. K. Turner, supra.*

*See also* Bush Hog, Inc. v. N. L. R. B., 420 F.2d 1266, 1269 (5 Cir. 1969).

However, elections have been set aside in such cases where the nonparty misconduct is shown to have created "an atmosphere of fear of reprisal such as to render a free expression of choice impossible." Manning, Maxwell & Moore, Inc. v. N. L. R. B., 324

■ The Company also asserts that the Board abused its discretion by not ordering the printing of an election notice and ballot in Tagalog, the language native to the Philippines, for use by one Filipino employee who spoke that language, and understood "some English * * * but not very well." This assertion is untenable. A Board agent did meet with this employee, and read the notice and ballot to him. The employee stated that he would be able to understand the ballot and notice with the aid of relatives if a copy were provided for his personal use. The copy was duly provided. There was certainly no abuse of discretion in the Board's failure to have the notice and ballot printed in Tagalog.[6] This conclusion is buttressed by the obvious observation that the election resulted in a vote of 24 to 8 in favor of the union, and this one ballot could not possibly have altered the results.

■ The Company further asserts that the election was unreasonably scheduled. The election was held on April 8 and 9, 1971. April 9 was Good Friday, and the Company complains that a number of "devout" Catholic employees failed to vote on that date. Again, we find the objection frivolous. The Company has made no showing that this scheduling precluded any employees from voting. Even assuming the existence of devout Catholics in the work force, nothing prevented their voting on April 8. Moreover, although the Company was given advance notice of the election dates, it waited until after the election, and the adverse results, before protesting the scheduling.

■ It is also alleged that the Board improperly counted two ballots which

F.2d 857, 858 (5 Cir. 1963); N. L. R. B. v. Griffith Oldsmobile, Inc., 455 F.2d 867, 870 (8 Cir. 1972). No such atmosphere has been shown to exist here.

6. Notices and ballots were printed in both English and Spanish.

should have been deemed void. This assertion is also wholly without merit.

The ballot instructions stated that the voter was to mark one of two large boxes which were designated "YES, SI" or "NO, NO", with an "X". Two ballots were marked by the insertion of the Spanish word "si" in the "YES, SI" box. These two ballots were counted by the Board as indicating the voters' affirmative answer to the question of union representation. The Company claims that these ballots were incorrectly marked, and that they should not have been counted.

 It is well established, however, that in representative elections, the Board will count all ballots where the voter's intent has been clearly manifested, even if the voter has not followed the proper designation procedure, provided that the mode of designation does not reveal the voter's identity. See, e. g., N.L.R.B. v. Tobacco Processors, Inc., 456 F.2d 248 (4 Cir. 1972); N.L.R.B. v. Titche Goettinger Co., 433 F.2d 1045, 1048 (5 Cir. 1970). N.L.R.B. v. Whitinsville Spinning Ring Co., 199 F.2d 585, 588 (1 Cir. 1952). The ballots were all properly counted.[7]

 Finally, the Company alleges that the Board abused its discretion in failing to permit intervention in the election of a machinists union. The record indicates, however, that the union in question was barred from intervention because of failure to comply with rules and regulations promulgated by the Board governing the procedure for such intervention in representative elections. There was no error.

### The Denial of the Evidentiary Hearing

 "It is well established that a hearing is not required in every case to determine the validity of objections to a Board-conducted election." N.L.R.B. v.

Golden Age Beverage Co., supra, 415 F. 2d at 33. Only where substantial and material factual issues are raised is the Board required to grant an evidentiary hearing. N.L.R.B. v. Medical Ancillary Services, Inc., 478 F.2d 96, 98–99 (6 Cir. 1973). See 29 C.F.R. § 102.69. And the party objecting to the election must supply the Board with evidence establishing a prima facie case for upsetting the results. N.L.R.B. v. Skelly Oil Co., 473 F. 2d 1079, 1083 (8 Cir. 1973). See generally N.L.R.B. v. Tennessee Packers, Inc., 379 F.2d 172, 177–178 (6 Cir.), cert. denied 389 U.S. 958, 88 S.Ct. 338, 19 L. Ed.2d 364 (1967).

 The Company had a full opportunity to present its case for setting aside the election. It filed lengthy objections, and furnished the Regional Director with various employee and officer declarations. The Company was also afforded an opportunity to present evidence in its request for review of the Regional Director's certification before the Board. See Southwestern Portland Cement Co. v. N.L.R.B., 407 F.2d 131, 135 (5 Cir. 1969), cert. denied 396 U.S. 820, 90 S.Ct. 59, 24 L.Ed.2d 71 (1969). We have carefully reviewed the entire record, and concur in the Board's conclusion that no substantial and material factual issues are here present requiring an evidentiary hearing. Even accepting the facts alleged in the allegations as true, such facts would not warrant setting aside the election. There being nothing to hear, an evidentiary hearing would have been a "senseless and useless formality." N.L.R.B. v. Air Control Products, 335 F.2d 245, 249 (5 Cir. 1964).

Our attention has been directed to the First Circuit procedure whereby those instituting frivolous challenges to Board orders may be taxed additional costs as a penalty. E. g., N.L.R.B. v. Hijos De Ricardo Vela, Inc., 475 F.2d 58, 61 (1 Cir. 1973); N.L.R.B. v. Smith & Wesson,

---

7. Columbus Nursing Home, Inc., 188 NLRB No. 131 (1971) is not to the contrary. The Board there recognized the general rule that the ballot will be counted if the voter's intent is apparent, but on the facts of that case concluded intent had not been clearly manifested.

424 F.2d 1072, 1073 (1 Cir. 1970). While we decline to institute this procedure in the instant case, we reserve the right to assess such penalties in appropriate future circumstances.

The order will be enforced.