**VALLEY ROCK PRODUCTS, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondents.**

No. 77–3854.

United States Court of Appeals, Ninth Circuit.

Jan. 25, 1979.

J. Mark Montobbio (argued), Severson, Werson, Berke & Melchior, San Francisco, Cal., for petitioner.

Andrew Tranovich (argued), Washington, D.C., for respondents.

Before BROWNING and HUG, Circuit Judges, and HOFFMAN,* District Judge.

PER CURIAM:

This case is before the court upon the petition of Valley Rock Products, Inc. to review and set aside an order of the National Labor Relations Board issued against it on December 5, 1977, and reported at 233 NLRB No. 142. The Board has cross-applied for enforcement of its order. This court has jurisdiction over the proceedings pursuant to § 10(e) and (f) of the National Labor Relations Act, 29 U.S.C. § 151, et seq. The order directed the employer to bargain with Local Union No. 3, International Union of Operating Engineers, AFL–CIO.

Valley Rock is engaged in the production and sales of sand and gravel, and in land leveling. A representation election conducted February 27, 1976, resulted in four votes cast for the union and eight votes against. The union filed objections to conduct affecting the results of the election, and a second election was held on July 27, 1976, pursuant to stipulation of the parties. At the second election twelve eligible voters cast six votes for the union, three votes against the union, and three ballots were challenged. The company filed timely objections to pre-election conduct by the union organizer.

After conducting *ex parte* administrative investigation, the regional director concluded that the company's objections raised insufficient material issues of fact to justify an evidentiary hearing. Additionally, the regional director sustained the challenge to one of the ballots, making it unnecessary to resolve the challenges to the remaining ballots. The Board adopted the regional director's recommendations and certified the union. In the customary manner the employer sought judicial review by refusing to recognize or bargain with the certified union.

The Board contends, that, in granting summary judgment overruling the employer's objections to the election, it acted within the broad discretion vested in it by Congress in matters relating to representation proceedings. We recognize that the Board does have broad discretion in such matters; the question here is whether the Board, in the circumstances presented by this record, abused that discretion. It is the position of the Board that the allegations made in the objections to the election and in the affidavits filed in support thereof, if fully credited, could not have materially affected the election outcome; therefore it was proper for the Board to grant summary judgment on the issues. We disagree.

The company contends that the election should be set aside because of physical attack by the union organizer upon the president and vice-president of the company six days before the election. Secondly, the company contends that the Board should have overruled the union's challenge to the ballot of Ray Nelson, who the company contends was on a leave of absence at the time of the election, and was therefore eligible to vote. In the alternative the company contends that it was entitled to a hearing on the above issues.

I

Six days prior to the election the union's business agent and chief organizer, Frank Townley, accosted the company's vice-president, Lawrence Beigh, at approximately 8:30 p. m., in a local bar. According to Beigh's affidavit, Townley crossed the bar to where Beigh was standing, shouted obscenities to his face, complained of the man-

---

* Honorable Walter E. Hoffman, Senior United States District Judge, Eastern District of Virginia, sitting by designation.

ner in which the company treated its employees, and grabbed Beigh by the back of his neck. Townley soon released Beigh, although Beigh alleges that he experienced neck pains as a result of the incident and required medical attention. One company employee witnessed the entire incident and another employee learned of the incident upon entering the bar soon thereafter.

At approximately 10:15 that same evening Ovila Fleury, president of Valley Rock, entered the bar. Fleury stated in his affidavit that he was unaware of what had transpired earlier between Townley and Beigh. Fleury alleged that Townley shouted obscenities to him from the other end of the bar and asked him if he was going to buy him a drink. When Fleury ignored Townley's remarks, the union organizer approached him in a threatening manner, told him that the company was starving its people to death, and eventually began pushing and shoving Fleury in a violent manner. Another individual was present who Fleury said was known to be a violent person. Fleury stated that this individual warned him that he was Townley's backup man and was there to help Townley beat Fleury. Two employees witnessed the entire incident; one intervened to prevent further disturbance. Fleury alleges that he broke a bar glass in order to get the bartender to call the police.

Townley subsequently pled guilty to two counts of disturbing the peace and was sentenced to ten days in jail, suspended, placed on six months probation and fined $250.00. Charges were filed against Fleury for breaking the glass, but were dropped when Fleury agreed to pay 18 cents for the glass.

Two employees witnessed the incidents, with at least one of said employees being present on each occasion. Due to the small town environment in which the company is located, and the small number of persons employed by the company, it can be assumed that a significant number of the employees learned of the incidents prior to the election. However, the incidents should be kept in a proper perspective. Townley's acts on the night of July 21 are the only significant violent or coercive acts of which the company complains. There is no evidence of a pattern of coercion on the part of the union in an effort to affect the outcome of the election. The regional director, in her report following the election, described the incidents as "relatively intense but brief confrontations between individuals with differing viewpoints and interests," and determined that other witnesses to the incidents viewed the byplay with less intensity and assigned to it less importance than the participants themselves. Townley's acts in the bar very likely represent no more than the result of a good night of drinking prior to a hotly contested election.

It is well established that Congress has entrusted the Board with wide discretion in conducting and supervising elections. *NLRB v. Sauk Valley Manufacturing Co., Inc.*, 486 F.2d 1127, 1130 (9th Cir. 1973). Accordingly, the party challenging the election carries a heavy burden in charging that coercion prevented a fair election, for evidence must be furnished overcoming the presumption that ballots cast under the safeguards provided by Board procedure reflect the true desires of the participating employees. *Id.* In order to obtain a hearing in a post-election representation proceeding, the objecting party must supply *prima facie* evidence presenting substantial and material factual issues which would warrant setting aside the election. *Alson Mfg. Aerospace Div. of Alson Industries, Inc. v. NLRB*, 523 F.2d 470, 472 (9th Cir. 1975).

The ultimate question in this case is not whether any improprieties occurred during the election campaign, but whether, under the circumstances, the particular conduct at issue created an environment of tension or coercion such as to preclude employees from exercising a free choice. For conduct to warrant setting aside an election, not only must that conduct be coercive, but it must be so related to the election as to have had a probable effect upon the employees' actions at the polls. *NLRB v. Golden Age Beverage Co.*, 415 F.2d 26, 32 (5th Cir. 1969).

Since no evidentiary hearing was ever held, we are bound on this record to accept as true the company's version of the alleged incidents in the bar on the night of July 21. *NLRB v. G. K. Turner Associates,* 457 F.2d 484, 487 (9th Cir. 1972).

We are cognizant of the deficiencies in the company's allegations. The company presents no direct evidence that the election was in fact affected by Townley's acts, such as affidavits from employees who might have been affected by knowledge of the violent acts. Instead the company relies on the inference that one might draw from an attack by a union official on company officers immediately prior to an election. In *Heavenly Valley Ski Area,* 215 NLRB 359 (1974), a company president pushed a former employee, who had attempted to organize a union, down a flight of stairs in a bar; the Board held such act to be an unfair labor practice. The Board reasoned in its opinion that the employees who witnessed the event might logically infer that a similar event might befall them because of adherence to the union, 215 NLRB at 361. In the instant case we would surmise that, had Fleury assaulted Townley prior to a company-won election, the union would have been awarded a post-election hearing on the matter.

When an issue requires determination of state of mind, it is unusual that disposition may be made by summary judgment. *Alson Mfg. v. NLRB, supra,* 523 F.2d at 472. It cannot be inferred, as a matter of law, that Townley's acts had no effect on the minds of the voting employees. The employer is not required to prove his case in order to obtain a hearing. *Id.*

Respondent argues that petitioner relies solely upon factual assertions contained in affidavits submitted to the Board nine months after the regional director's report was completed. Citing *Oshman's Sporting Goods, Inc. v. NLRB,* 586 F.2d 699 (9th Cir. 1978), respondent contends that the affidavits were submitted much too late to be considered at the unfair labor practice hearing. In *Oshman's* the employer argued that the regional director did not get the full story when interviewing a key witness, and the employer then attempted to submit to the Board an affidavit from the employee containing additional facts which were not before the regional director. It is clear from reading the regional director's report in the instant case that the principal allegations of fact contained in the petitioner's affidavits were before her when she reached her decision. *Oshman's* is therefore distinguishable.

II

The remaining issue involves the challenged ballot of employee Nelson. On February 6, Nelson requested by letter that he be granted a leave of absence for personal reasons. A week later the company mailed him notice that he had been granted a leave of absence not to exceed one year. Two weeks later Nelson voted in the first election. He returned to vote in the second election held in July. During his leave of absence Nelson was self-employed hauling logs. He returned to full-time employment with Valley Rock on October 17, approximately eight months after his leave of absence began.

The regional director indicated in her report that Nelson thought his leave of absence had expired after three months. At the time of her investigation Nelson apparently indicated that he expected to stay in business for himself for the foreseeable future. The regional director concluded that any employment relationship that Nelson may have in the future with Valley Rock would be conditional upon the termination of his personal business endeavor, and that if he ultimately returned he would be "rehired" as an employee.

There is a presumption that an employee granted a leave of absence is still an employee. This court recently considered the issue in *NLRB v. Adrian Belt Co.,* 578 F.2d 1304, 1308 (9th Cir. 1978):

Employees on layoff or leave of absence during the relevant period, who have not quit or been terminated and who have a reasonable expectation or

[sic] recall, qualify as eligible voters because of their continued ties to the employee unit. *American Motors Corporation,* 206 NLRB 287, 291 (1973); *Miami Rivet Company,* 147 NLRB 470, 483 (1964). A worker on a leave of absence continues to be regarded as an employee unless it is established by overt action or clear communication that the employment relationship has been terminated. *Trailmobile Division, Pullman, Inc. v. N. L. R. B.,* 379 F.2d 419 (5th Cir. 1967). *Cf. N. L. R. B. v. Pacific Gamble Robinson Co.,* [438 F.2d 112] *supra; Bio-Science Laboratories v. N. L. R. B.,* 542 F.2d 505 (9th Cir. 1976).

█ This presumption of continued employment, coupled with the company's letter informing Nelson that he had been granted a leave of absence not to exceed one year, presented a *prima facie* case that Nelson was an employee at the time of the election. The company was entitled to a hearing in which it might present additional evidence contesting the challenge to Nelson's ballot.

Valley Rock has raised substantial and material issues of fact regarding the pre-election conduct of Townley and the challenge to Nelson's ballot. The company should be granted an evidentiary hearing on the issues presented in order to determine whether the environment in which the election was conducted was affected by Townley's acts, and to determine whether the challenge to Nelson's ballot was properly sustained.

ENFORCEMENT DENIED.