**NATIONAL LABOR RELATIONS
BOARD, Petitioner,**

v.

**PACIFIC INTERNATIONAL RICE
MILLS, INC., Respondent.**

No. 77–4034.

United States Court of Appeals,
Ninth Circuit.

April 17, 1979.

Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., for petitioner.

William F. Terheyden, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for respondent.

Before BROWNING and CARTER, Circuit Judges, and WOLLENBERG,* District Judge.

WOLLENBERG, District Judge:

The National Labor Relations Board (NLRB), pursuant to the National Labor Relations Act (NLRA), as amended, 29 U.S.C. §§ 151 *et seq.,* seeks enforcement of its order granting summary judgment against respondent, Pacific International Rice Mills, Inc., for the unfair labor practice of refusing to bargain with the union,[1] in violation of sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. §§ 158(a)(1), (5). Respondent contests the underlying representation election and certification of the union as collective-bargaining representative on the grounds that there does not exist substantial evidence in the record supporting the NLRB's findings of fact and that the hearing officer, whose findings and recommendations the NLRB adopted, was improperly biased against the employer because of his union membership. The Court rejects respondent's contentions and grants the NLRB's petition for enforcement of its order.

## FACTS

This controversy arose out of a disputed representation election held in April, 1975, at respondent's Woodland facility. The tally of ballots showed twenty-five votes for and twenty-one votes against the union, and six challenged ballots. The NLRB directed a hearing on the challenged ballots and on fifteen of eighteen objections to the election that the company had timely filed. The objections alleged that the union made many material misrepresentations on subjects such as benefits, the pension and profit-sharing plans, and strike votes, unlawfully interrogated employees, coerced employees to vote for the union, and created an atmosphere of fear and coercion. In addition, the company argued that the cumulative effect of the numerous misrepresentations made by the union agent, combined with the extremely close vote, mandated that the election be set aside.

A hearing examiner considered evidence presented at a hearing in October, 1975, and

---

* Honorable Albert C. Wollenberg, United States District Judge, Northern District of California, sitting by designation.

1. Chauffeurs, Teamsters and Helpers Local Union No. 150, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

the company's post-hearing brief, and issued a report recommending that the NLRB overrule all objections except the company's challenges to four ballots, and certify the union as the collective-bargaining representative as the challenges were not determinative of the election. The company filed exceptions to the hearing examiner's report and a supplemental brief contending that the examiner could not have acted impartially because he is a member of the National Labor Relations Board Employees Union. In April, 1976, the NLRB adopted the hearing examiner's findings and recommendations and certified the union; the NLRB denied reconsideration of these actions.

In September, 1976, the Regional Director of the NLRB issued a complaint that the company refused to bargain pursuant to a union request in violation of section 8(a)(1) and (5) of the NLRA, 29 U.S.C. §§ 158(a)(1), (5). The company answered that it had insufficient knowledge of the union's status as a labor organization and denied that the union had requested bargaining and that it had refused. Respondent-company also renewed its contention that the April, 1975, election should be set aside. Following a motion for summary judgment and issuance of an order to show cause by the NLRB, respondent, in its response to the order to show cause filed in November, 1976, raised the defense that after the representation hearing, information had come to its attention that the union to which the hearing examiner belongs might be affiliated with the labor organization involved in the action at hand, the Teamsters Union.

In February, 1977, the NLRB issued a decision and order, which it has refused to reconsider, granting the motion for summary judgment based on a finding that there was no new evidence or special circumstances showing error in the representation case.[2]

It found that respondent violated section 8(a)(1) and (5) of the NLRA by refusing to bargain with the union and ordered respondent to cease and desist from such refusal and to bargain upon request with the union, and if an agreement is reached, to embody it in a signed contract and to post appropriate notices.

## DISCUSSION

In order to determine whether to enforce the NLRB order, the Court must decide whether the NLRB reasonably exercised its broad discretion in conducting representative elections by overruling respondent's election objections and therefore finding that the company's refusal to bargain with the certified representative of its employees violated sections 8(a)(1) and (5) of the NLRA. Respondent carries a heavy burden to overcome the presumption of correctness of the NLRB determination that the election reflected the employee's free choice. *See, e. g., N. L. R. B. v. Sauk Valley Manufacturing Co., Inc.,* 486 F.2d 1127 (9th Cir. 1973). "If the findings of the [NLRB] are supported by substantial evidence on the record considered as a whole, they are conclusive; and so long as the Board did not misapply the law, the order is to be affirmed." *N. L. R. B. v. Heath Tec Division/San Francisco,* 566 F.2d 1367 (9th Cir. 1978).

### 1. Hearing Examiner's Review of the Record.

The NLRB specifically adopted the findings of the hearing examiner. Record at 137. His determination of the validity of the respondent's objections relied upon credibility determinations. At the hearing on the objections, four of respondent's employees appearing on its behalf[3] testified that the union agent, Tony Santos, had made certain statements at two organizational meetings held on April 8, and April

---

2. 228 N.L.R.B. 464 (1977).

3. Richard Jojo, Lonnie Lang, Donald C. Eisenhart, and Kenneth O. Peak all testified on the respondent's behalf.

12, 1975, upon which the objections were based. A fifth employee, Wesley Medlin, testified that Santos had abusively asked him to leave one meeting because of Santos' belief that Medlin was pro-employer. Santos denied making any of the objectionable statements attributed to him by these witnesses. Another employee, Daniel Barrus, supported Santos' testimony.

■ The hearing examiner accepted the testimony of Santos and Barrus on the ground that the other testimony was "internally self-contradictory, collectively inconsistent, the product of faulty memory, and to a large part based on subjective determinations of what Santos meant rather than what he stated." Record at 89.[4] This Court will not disturb credibility resolutions "unless a clear preponderance of all the [relevant] evidence convinces that they are incorrect." *N. L. R. B. v. International Longshoremen's & Warehousemen's Union & Local 27*, 514 F.2d 481, 483 (9th Cir. 1975); *N. L. R. B. v. Luisi Truck Lines*, 384 F.2d 842, 846 (9th Cir. 1967).

■ The hearing examiner's opinion properly demonstrates that substantial evidence in the record supports the reasoning underlying his credibility determination. Employees Jojo and Lang both contradicted themselves on the key question of what Santos promised that union victory would mean to the employees. On the one hand, they testified that Santos stated that certain benefits would accrue immediately upon union victory, Transcript at 37, 56, but, on the other hand, they also testified that Santos stated that these same benefits would be subject to collective bargaining. Transcript at 36, 66–67. Employees Eisenhart and Peak consistently stated that Santos promised that benefits such as retirement plans and insurance coverage would "automatically" take effect upon union victory. While they admitted that Santos ex-

plained collective bargaining, they maintained that he never stated that benefits would be subject to bargaining. This distinction appears rather confused and subjective, especially considering Lang's contradictory admission that Santos stated at the meeting Eisenhart and Peak attended that everything would be part of collective bargaining. Transcript at 66–67. In light of these contradictions and inconsistencies, this Court could not find that a clear preponderance of all the relevant evidence weighs against the hearing examiner's credibility determination.

■ The hearing examiner also properly disregarded Medlin's testimony. None of the witnesses who attended the meeting at which Medlin appeared corroborated his testimony. The evidence pertaining to Medlin's status as a clerk at a separate facility, as opposed to being a warehouseman at Woodland, supports Santos' explanation that he asked Medlin to leave the meeting because of Medlin's apparent ineligibility to vote. Finally, even if Santos made such statements to Medlin, they would not constitute sufficient evidence to show that an atmosphere of fear and coercion pervaded the election.

*2. Hearing Examiner's Membership in a Union.*

Respondent has urged on various grounds that the hearing examiner's alleged membership in the National Labor Relations Board Employees Union and the NLRB's refusal to hold a hearing on the potential affiliation of that union with petitioner-union denied it due process. The Court concurs in the NLRB's rejection of these claims.

■ A hearing examiner's membership in a union will not ordinarily violate an employer's right to a fair hearing. *See generally, Abbott Laboratories, Ross Laboratories Division v. N. L. R. B.*, 540 F.2d 662, 665 n.1 (4th Cir. 1976) (holding that a hearing officer's possible membership in the

4. The hearing examiner did not ignore the alleged inconsistencies in her testimony of Barrus and Santos, as respondent claims, but rather upon analysis viewed them as nonexistent. Record at 89.

same union as a witness would not show that he had an interest in the litigation). Executive Order 11491 gives each federal employee the right to participate in labor organizations:

> Each employee of the executive branch of the Federal Government has the right, freely and without fear of penalty or reprisal, to form, join, and assist a labor organization or to refrain from any such activity, and each employee shall be protected in the exercise of this right. Except as otherwise expressly provided in this Order, the right to assist a labor organization extends to participation in the management of the organization and acting for the organization in the capacity of an organization representative, including presentation of its views to officials of the executive branch, the Congress, or other appropriate authority.

Exec.Order No. 11491 § 1(a) 3 C.F.R. 510 (1971). The fact that the order prohibits federal "employees engaged in administering a labor-management relations law" from membership in certain unions, Exec. Order No. 11491 § 3(d) 3 C.F.R. 512 (1971),[5] indicates that the order intended to cover NLRB employees.[6]

Respondent's failure to show that the hearing examiner's union was one of those covered by section 3(d) establishes the propriety of his union status. In addition, the record clearly evidences the hearing examiner's impartiality. He took an active interest at the hearing questioning both employer and employee witnesses. Substantial evidence in the record supports his well-documented findings.

Several months after the NLRB's consideration of the employer's objections to the certification election, during the unfair labor practice proceeding, the employer re-submitted its demand for a hearing on the issue of the hearing examiner's union status. Record at 184. In these papers, the employer made the additional claim that the hearing examiner's union might be affiliated with petitioner's union in violation of section 3(d).

The NLRB properly refused to reconsider this claim. In the absence of newly discovered or previously unavailable evidence or special circumstances, a respondent in an unfair labor practice proceeding is not entitled to relitigate issues which were or could have been litigated in a prior representation proceeding. *N. L. R. B. v. Decoto Aircraft, Inc.*, 512 F.2d 758, 761 (9th Cir. 1975). Respondent provides no justification for its failure to raise the question of union affiliation at the time of the representation proceeding when it first objected to the hearing examiner's union membership.

Accordingly, the NLRB's petition for enforcement of its order is granted.

---

5. This section provides:

> Employees engaged in administering a labor-management relations law or this Order shall not be represented by a labor organization which also represents other groups of employees under the law or this Order, or which is affiliated directly or indirectly with an organization which represents such a group of employees.

6. The NLRB also implied that it would be placed in an impossible quandary if mere membership in a union could disqualify a hearing examiner. Since many of its employees are in an employee's union or perform management or supervisory duties for the agency, it would be hardpressed to provide hearing examiners that would not be subject to similar union or employer objections. Record at 137–38.