**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DYNCORP/DYNAIR CORPORATION,
Petitioner,

v.                                              No. 96-2822

NATIONAL LABOR RELATIONS BOARD,
Respondent.

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.                                              No. 97-1092

DYNCORP/DYNAIR CORPORATION,
Respondent.

On Petition for Review and Cross-Application
for Enforcement of an Order
of the National Labor Relations Board.
(31-CA-22083)

Argued: July 8, 1997

Decided: August 28, 1997

Before WILKINSON, Chief Judge, and WILKINS
and WILLIAMS, Circuit Judges.

_____

Enforcement granted by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephen Russell Leuke, Matthew Todd Wakefield, BAL-LARD, ROSENBERG & GOLPER, Universal City, California, for Petitioner. Daniel Josef Michalski, NATIONAL LABOR RELA-TIONS BOARD, Washington, D.C., for Respondent. **ON BRIEF:** Frederick L. Feinstein, General Counsel, Linda Sher, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Fred L. Cornnell, Supervisory Attorney, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

DynCorp/DynAir Corporation ("DynAir") petitions for review of a National Labor Relations Board ("Board") bargaining order, and the Board cross-petitions for enforcement of that order. DynAir defends its refusal to bargain, arguing that the Board certified too narrow a bargaining unit. The Board's bargaining unit determination, however, was within the scope of its discretion. Furthermore, the Board's actions with respect to the Union's showing of employee interest are non-litigable, and the valid representation election renders the company's questions concerning that prior showing of interest moot. Accordingly, we grant the Board's petition for enforcement.

I.

DynAir is an independent company which provides passenger, line maintenance, cargo handling, ramp and cabin cleaning, and other aviation services to domestic and international airlines at airports worldwide. DynAir provides these services to approximately 30 airlines at the Los Angeles International Airport ("LAX"). On January 31, 1995,

2

the Miscellaneous Warehousemen, Drivers and Helpers, Local 986, International Brotherhood of Teamsters, AFL-CIO ("Union") filed a petition to represent a unit including "all mechanics" employed by DynAir at its LAX facility. At the commencement of the February hearing on the Union's petition, the Union amended its petition to narrow the unit to only airframe and power plant mechanics ("A & Ps").

DynAir contended that an appropriate unit must also include all other ground service employees -- mechanics, cleaners, rampers, and dispatchers. DynAir presently has three other unionized U.S. facilities, and employs A & Ps at two of those locations. Pursuant to stipulations between DynAir and the respective union at each of those airports, the Board-certified bargaining units include A & Ps along with all other ground service employees.

On March 16, 1995, the Acting Regional Director issued a Decision and Direction of Election approving the Union's proposed unit and directing an election among employees in that unit. One week later, DynAir moved to dismiss the Union's petition with prejudice based on allegations that a supervisor personally participated in organizational activities on behalf of the Union and thereby compromised the validity of the Union's showing of interest. On April 5, 1995, the Regional Director denied DynAir's motion because the Union submitted a new showing of interest that was not tainted by supervisory involvement.

The Board then conducted the election on April 14, 1995. Those favoring union representation prevailed. Accordingly, on February 29, 1996, the Regional Director certified the Union as the exclusive collective bargaining representative of the employees in the unit. DynAir subsequently refused to bargain with the Union, leading to an unfair labor charge and this appeal.

II.

DynAir argues that the bargaining unit certified by the Board -- comprised solely of A & Ps, and excluding all other ground service employees -- is inappropriate. The issue, however, is not one for first-instance resolution by this Court. Section 9(b) of the National

3

Labor Relations Act delegates to the Board the power to determine "the unit appropriate for the purposes of collective bargaining." 29 U.S.C. § 159(b). The Board possesses broad discretion in reaching this decision, "reflecting Congress' recognition`of the need for flexibility in shaping the [bargaining] unit to the particular case.'" NLRB v. Action Automotive, Inc., 469 U.S. 490, 494 (1985) (quoting NLRB v. Hearst Publications, Inc., 322 U.S. 111, 134 (1944)); see also Arcadian Shores, Inc. v. NLRB, 580 F.2d 118, 119 (4th Cir. 1978).

Here, the Board acted within the scope of its discretion. The A & Ps are the only employees who repair the aircraft serviced by DynAir. They are, therefore, significantly more skilled than DynAir's other ground service employees. Furthermore, only the A & Ps must earn FAA certification as a prerequisite to their position. The FAA issues such licenses only upon the individual's completion of at least two years of schooling and the passing of a licensing exam. Thus, the A & Ps are more highly educated than the other ground service employees. The Acting Regional Director, in his decision, noted the Board's past reliance on just such a distinction in the aircraft service context, citing Tri-State Aero, Inc., 180 N.L.R.B. 60, 60-61 (1969) (line service employees "do not use any particular skill or academic discipline in the performance of their work" and therefore constitute appropriate bargaining unit separate from mechanics). The distinction between A & Ps and other ground service employees is further demonstrated by the wage differential within DynAir's work force. A & Ps earn a starting wage of $14 to $17 per hour, whereas ground service mechanics earn $10 to $15, rampers earn $5.50 to $6.50, and cleaners earn $4.75 to $6 per hour. In light of the Board's discretion in this area, and the substantial differences between the A & Ps and other ground service employees, we cannot say that the Board erred in designating the A & Ps as an appropriate bargaining unit.

DynAir argues, however, that the Board acted inconsistently in light of DynAir's own bargaining history at its other unionized facilities. The company's evidence with respect to this factor is not compelling. DynAir provides its services at twenty-four U.S. airports. Yet it presently has only three other unionized facilities, and employs A & Ps at just two of the three. A & Ps are included in Board-certified units along with all other ground service employees only pursuant to stipulations by DynAir and the respective unions. The fact that these

4

units were stipulated ones is significant: "The rule has been often stated that `where the parties stipulate that the appropriate unit will include [or exclude] given jobs, the Board may not alter the unit; its function is limited to construing the agreement according to contract principles, and its discretion to fix the appropriate bargaining unit is gone.'" Methodist Home v. NLRB, 596 F.2d 1173, 1176 (4th Cir. 1979) (quoting Tidewater Oil Co. v. NLRB, 358 F.2d 363, 365 (2d Cir. 1965)). Because the Board was constrained by the stipulations governing collective bargaining at these other locations, it can hardly be held to have acted arbitrarily or inconsistently when it determined under applicable Board precedent that the A & Ps at the LAX facility constituted a separate appropriate bargaining unit.

DynAir argues finally that this court's decision in NLRB v. Lundy Packing Co., 68 F.3d 1577 (4th Cir. 1995), cert. denied, 116 S. Ct. 2551 (1996), dictates the denial of the Board's petition for enforcement here. Lundy Packing, however, presented a different case. The quality control employees excluded by the Board from the bargaining unit there shared, inter alia, comparable wages and similar educational backgrounds with those employees included in the unit. Id. at 1580. The differences here between the A & Ps and DynAir's other ground service employees are more pronounced and could not be described as "meager." Id. at 1581. Moreover, in Lundy Packing, the Board had developed a consistent rationale for including quality control employees along with production and maintenance employees. Id. at 1582. We do not observe a similar clear rule in the Board's decisions regarding aircraft service employees and therefore do not discern the inconsistency that was so apparent in Lundy Packing.*

III.

DynAir also contends that the Board's failure to dismiss the Union's petition for election with a six-month prejudice period allowed the alleged supervisory misconduct to taint the entire representation proceedings. We disagree. DynAir concedes that it is not

_____

*As the Board notes, DynAir and the Union could agree in the future, through collective bargaining, to alter the scope of the bargaining unit. See, e.g., The Idaho Statesman v. NLRB, 836 F.2d 1396, 1400 (D.C. Cir. 1988).

5

challenging the validity of the ultimate election, as it must because it failed to file exceptions to the hearing officer's post-election findings. Yet the validity of the Union's pre-election showing of interest -- the issue DynAir does raise in this appeal -- is not litigable.

A union's showing that "a substantial number of employees . . . wish to be represented for collective bargaining," 29 U.S.C. § 159(c)(1)(A), serves only as a screening mechanism for the Board to determine when there is a true "question of representation affecting commerce," id. § 159(c)(1), that deserves the Board's attention. "The section 9(c)(1)(A) substantial interest requirement is not a jurisdictional prerequisite to NLRB action . . . ." NLRB v. Metro-Truck Body, Inc., 613 F.2d 746, 749 (9th Cir. 1979), cert. denied, 447 U.S. 905 (1980). Thus, courts have regularly held that the validity of the showing of interest is committed to the Board's discretion and may not be litigated. Intertype Co. v. NLRB, 401 F.2d 41, 43 (4th Cir. 1968), cert. denied, 393 U.S. 1049 (1969). Whether a union enjoys support among the employees of a bargaining unit is conclusively determined by the actual representation election. Id. at 43; Metro-Truck Body, 613 F.2d at 750. Because the validity of that election is not contested here, DynAir's challenge to the prior showing of interest is moot.

IV.

For the foregoing reasons, we deny the company's petition for review and grant enforcement of the Board's order.

ENFORCEMENT GRANTED

6